Kenneth Dwayne SWINNEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 01-91-00007-CR.

Court of Appeals of Texas, Houston (1st Dist.).

March 26, 1992.

Judith Ann Ritts, Bellaire, for appellant.

John B. Holmes, Jr., Dist. Atty., Lester Blizzard, Randell Ayers, Asst. Dist. Attys., Houston, for appellee.

Before DUGGAN, MIRABAL and WILSON, JJ.

## OPINION

DUGGAN, Justice.

The trial court found appellant guilty of delivery of less than 28 grams of cocaine. Appellant pled true to two enhancement paragraphs in the indictment, and the court assessed his punishment at 35 years confinement. Appellant asserts three points of error. We affirm.

Officer Gary Dora testified that he met appellant on July 23, 1990, while he was assigned to the Southwest Tactical Unit Narcotics detail and working as part of a team performing undercover controlled "buys" of narcotics at the intersection of Rampart and Glenmont in Houston. As Dora approached, driving an unmarked car, appellant and three other males standing in a convenience store parking lot at the intersection gave him a hand and head gesture. Based on his experience as a narcotics officer, Dora knew the gestures to mean they were selling drugs.

Officer Dora stopped and said he needed "a twenty." Although this statement was not directed to any specific individual in the group, appellant, who Dora identified in the courtroom, separated from the group and directed Dora to park his car.

When appellant approached the parked car and asked Dora what he needed, Dora replied that he needed a twenty dollar rock; appellant went back to the group and spoke with one of the individuals. Officer Dora could not hear their conversation. Appellant then accompanied that individual, a juvenile, back to Dora's vehicle. The juvenile got inside the officer's vehicle on the passenger's side, and appellant stood just inside the angle created by the car frame and the open passenger door. The juvenile asked Dora how many he needed, and Dora said just one; the juvenile then poured crack cocaine from a vial into his hand to show Dora. Appellant remained outside the vehicle during the entire transaction. Officer Dora then took one of the "rocks," handed the juvenile twenty dollars, and

noted as he left that appellant and the juvenile stood together in front of the store.

Officer Dora field-tested the substance, determined that it was cocaine, and notified the raid team by car radio as he left the scene. He drove back to the scene to verify that the team had arrested the right person, and tagged and deposited the contraband in the HPD lockbox. He also verified that a photograph of appellant, taken at the time of his arrest, was that of the suspect present during the drug transaction.

Appellant, who was on parole and was transferring to Louisiana, testified that he was standing at the corner waiting for a bus; Dora testified he was not at the bus stop. Although appellant testified the bus to Louisiana left at 12:55 p.m., Dora's offense report showed that the arrest, which occurred within minutes of the drug transaction, took place at 1:45 p.m. Appellant denied making any gestures, or approaching or speaking to Officer Dora. It is unclear from the record whether appellant testified he spoke to the juvenile; however, he stated that he was not acquainted with any of the individuals on the corner prior to that day. No controlled substances were found on appellant, who had on his person only seventy cents, which he claimed was bus fare. The only controlled substances shown in court were those found on the juvenile. The jury found appellant guilty of delivery by constructive transfer only.

In appellant's first point of error, he urges that the evidence is insufficient to support his conviction for constructive transfer of a controlled substance because it does not show that, prior to the alleged delivery, he had either direct or indirect control over the controlled substance Officer Dora purchased.

■ The elements of the offense of delivery of a controlled substance are: 1) a person, 2) knowingly or intentionally, 3) delivers, 4) a controlled substance. *Stewart v. State*, 718 S.W.2d 286, 288 (Tex. Crim.App.1986); TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (Vernon Pamph. 1992). Section 481.002 of the Health and

Safety Code defines "delivery" of a controlled substance as:

(8) "Deliver" means to transfer, actually or constructively, to another a controlled substance ... regardless of whether there is an agency relationship. The term includes offering to sell a controlled substance....

(9) "Delivery" or "drug transaction" means the act of delivering.

TEX. HEALTH & SAFETY CODE ANN. § 481.-002(8) & (9) (Vernon Pamph.1992).

■ Thus, constructive delivery is the transfer of a controlled substance, either belonging to an individual or under his control, by some other person or agency, at the instance and direction of the individual accused of such transfer. *Atuesta v. State,* 788 S.W.2d 382, 385 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd). Constructive transfer is proved by showing that 1) prior to the alleged delivery, the transferor had either direct or indirect control of the substance transferred, and 2) the transferor knew of the existence of the transferee. *Daniels v. State,* 754 S.W.2d 214, 220–22 (Tex.Crim.App.1988) (citing *Rassmussen v. State,* 608 S.W.2d 205, 209–10 (Tex.Crim.App.1980) and *Gonzalez v. State,* 588 S.W.2d 574, 577 (Tex.Crim.App. 1979)).

■ While mere presence at the scene of an offense is not sufficient to make one a party to the offense, it is a circumstance tending to prove that one is a party when taken with facts sufficient to prove participation. *Medellin v. State,* 617 S.W.2d 229, 231 (Tex.Crim.App.1981). Sufficient evidence of constructive delivery has been found where the suspect initiated and was present during the transaction, even though he did not hand over the contraband or accept any money. *Woods v. State,* 734 S.W.2d 414, 415 (Tex.App.—Houston [1st Dist.] 1987), *vacated and remanded on other grounds,* 758 S.W.2d 285 (Tex.Crim.App.1988).

■ Appellant concedes that he knew of the existence of the transferee, Officer Dora. However, he urges that the State failed to meet its burden to show that he, as the alleged transferor, had either direct or indirect control of the crack cocaine transferred, relying on *Davila v. State,* 664 S.W.2d 722 (Tex.Crim.App.1984). In *Davila,* an undercover officer and a companion, Chism, entered the living room of a house where neither Davila nor her common-law husband, Cosme, lived. Davila and another person were seated on a couch. Davila, who knew Chism, got up and asked what the two wanted. Chism answered simply "four." Davila went outside, engaged in a brief conversation with Cosme, and returned inside and resumed her seat. Cosme came in "in short order," approached Chism, and asked what he wanted. Chism answered "four," and Cosme, who had "precisely four" balloons containing cocaine in his hand, placed them in Chism's hand in exchange for $130.

The indictment charged that Davila "constructively" transferred the heroin to Chism, and the State was thus obligated to prove a constructive transfer. *Davila,* 664 S.W.2d at 724. In affirming the court of appeals judgment reversing Davila's conviction, the Court of Criminal Appeals held:

The evidence ... fails to show that [Davila] had direct or indirect control of the contraband prior to its delivery, and does not show that the contraband was delivered by Cosme at [Davila's] instance or direction ... At most the evidence shows that [Davila] merely relayed Chism's offer to buy to her husband Cosme. Cosme negotiated both the quantity and the price before making the delivery. [Davila] made no response when Chism offered to buy "four." The fact that she might have understood what he meant by his cryptic offer is no proof that the contraband was under her direct or indirect control prior to its delivery by Cosme to Chism. Furthermore, [Davila's] act in merely relaying an offer from buyer to seller is not sufficient to prove that the seller acted at [her] "instance or direction".... There is no proof that [Davila] had any control over Cosme's actions.

664 S.W.2d at 724–725.

*Davila* is distinguishable from our case. There, after the officer and Chism entered

the house, Davila asked Chism what they wanted and relayed that request to Cosme, the person selling the drugs. Davila did not initiate the transaction because she did not indicate that she, herself, was selling drugs. *Davila*, 664 S.W.2d at 723. While she obviously told Cosme that Chism wanted drugs, and indicated to Cosme out of Chism's presence who and where Chism was, she did not bring him to Chism and did not stand by Chism and Cosme to monitor the transaction. By contrast, in our case appellant initiated the transaction when he made a head and hand gesture to Officer Dora indicating that he was selling drugs, approached Dora, directed him where to park his car, and asked him what he wanted. Appellant then walked over to the juvenile who had the drug, brought him to Dora, and stood by to monitor the transaction. Thus, in contrast with *Davila*, appellant initiated and was present during the transaction. Even though he did not hand over the contraband or accept the money, the transaction was done at his instance and direction; appellant thereby acted as a party to a constructive transfer.

■ In reviewing the sufficiency of the evidence to support a conviction based upon direct evidence, the evidence is viewed in the light most favorable to the verdict to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see also Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied*, 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988); *Flournoy v. State*, 668 S.W.2d 380, 383 (Tex.Crim.App.1984). The entire body of evidence must be reviewed to determine whether the State has proved beyond a reasonable doubt every element of the alleged offense. *Jackson*, 443 U.S. at 307, 99 S.Ct. at 2781; *see also Sharp*, 707 S.W.2d at 614. If there is evidence that establishes guilt beyond a reasonable doubt, and the trier of fact believes that evidence, we cannot reverse the judgment on sufficiency of the evidence grounds. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988).

Officer Dora, an experienced police officer, testified that appellant gave a hand and head gesture that indicated he was selling drugs. After Dora said he wanted "a twenty," appellant directed him to park his vehicle, asked him what he wanted, returned to the group, spoke with a juvenile, and accompanied the juvenile to Dora's vehicle. Appellant remained just inside the vehicle's door during the entire transaction. Viewed in the light most favorable to the verdict, the evidence shows that appellant exercised indirect control over the drugs, that the juvenile acted under his direction, and that he was aware of Dora, the transferee. *Atuesta*, 788 S.W.2d at 385.

Appellant's point of error one is overruled.

■ In points of error two and three, appellant urges that the penalty assessed by the trial judge, 35 years confinement, is so excessive that it constitutes cruel and unusual punishment in violation of the eighth amendment to the U.S. Constitution and article 1, section 13 of the Texas Constitution. Appellant concedes that in light of the rulings of the Texas Court of Criminal Appeals, an appeal prefaced on the grounds of disproportionate punishment is frivolous. However, he raises the issue to prevent a waiver of his anticipatory claims in federal court.

Appellant was convicted of the offense of delivery, by constructive transfer, of a controlled substance weighing by aggregate weight less than 28 grams. He also stipulated and pled true to felony convictions alleged in two enhancement paragraphs. The court assessed his punishment at 35 years confinement.

Delivery of less than 28 grams of cocaine, a substance found in penalty group one, is a first degree felony. TEX. HEALTH & SAFETY CODE ANN. § 481.112(b) (Vernon Pamph.1992). The legislature has set the punishment for a first degree felony at confinement for life, or for any term of not more than 99 years, or less than 5 years, and not less than 25 years confinement when enhanced by two prior felony convic-

tions. TEX. HEALTH & SAFETY CODE ANN. § 481.106(a) (Vernon Pamph.1991); TEX. PENAL CODE ANN. § 12.42(d) (Vernon 1992). Section 12.42 of the TEX. PENAL CODE was specifically upheld against a similar constitutional attack. *Rummel v. Estelle,* 445 U.S. 263, 285, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980); *Simpson v. State,* 668 S.W.2d 915, 919 (Tex.App.—Houston [1st Dist.] 1984, no pet.).

■ Punishment assessed by the judge or jury within the limits prescribed by statute is not cruel and unusual within the constitutional prohibition. *Harris v. State,* 656 S.W.2d 481, 486 (Tex.Crim.App.1983); *Combs v. State,* 652 S.W.2d 804, 806 (Tex. App.—Houston [1st Dist.] 1983, no pet.).

Appellant's points of error two and three are overruled.

The judgment is affirmed.

WILSON, J., dissents.

WILSON, Justice, dissenting.

I respectfully dissent from the holding of the majority because I am unable to distinguish the facts in this case from those in *Davila v. State,* 664 S.W.2d 722 (Tex.Crim. App.1984). If there is a reasonable doubt as to the guilt of Mrs. Davila, there is reasonable doubt as to the guilt of this appellant.

The basic question before us is whether the evidence is sufficient to show appellant exercised indirect control over the drugs.[1] I believe the evidence is insufficient to prove appellant guilty of a constructive transfer of the drugs. More specifically, the evidence is insufficient to prove that prior to the sale appellant had either direct or indirect control over the drugs, a necessary element of constructive transfer.

The majority has outlined in its opinion a process the trial court could have followed in arriving at his verdict of guilt. Under the applicable standard of review, this is our Court's appropriate task. I respectfully suggest that this process is clouded by an unproven assumption.

In its conclusion to the sufficiency point of error, the majority makes the following statement:

Viewed in the light most favorable to the verdict, the evidence shows that appellant exercised indirect control over the drugs, that the juvenile acted under his direction, and that he was aware of Dora, the transferee.

Why has the majority decided "that the juvenile acted under his [the appellant's] direction"? The opinion is not clear to me on what foundation this conclusion rests. If this conclusion is based only on the evidence contained in the record, such evidence is insufficient to support the conclusion. If the conclusion is only an assumption derived singularly from the fact that appellant was an adult, and the transferor of the drugs, a juvenile, then such an assumption cannot be rationally inferred from that lone fact.

Does the evidence prove the juvenile acted under the direction of the appellant absent any assumptions about their relationship? The statements made by the majority, that appellant exercised indirect control over the drugs, and that the juvenile acted under appellant's direction, are redundant when stated as a conclusion. If the juvenile acted at appellant's direction, that fact is sufficient standing alone to prove indirect control over the drugs within the facts of this case. I assume the majority means that appellant exercised indirect control over the drugs *because* the juvenile acted under his direction.

The only evidence mentioned by the majority relative to the narrow issue of the relationship between the two is the statement that appellant "monitored" the actual transfer of the drugs in the car between the officer and the juvenile. I find nothing in the evidence to indicate how the majority concluded that appellant "monitored" the transaction as distinguished from finding appellant could see and hear the transaction as the officer testified. The use of the word monitoring implies control. I fear the majority has reached its conclusion, that appellant "monitored" the transaction,

1. The State makes no claim that the evidence shows direct control.

based on an unproven assumption outside the evidence about the relationship between appellant and the juvenile.

Is it rational for a factfinder to assume from the respective ages alone that the juvenile acted under the direction of appellant? It would seem to be only a common sense conclusion drawn from life's experiences that anyone could properly and rationally infer that a juvenile, when acting together with an adult, would ordinarily act under the adult's direction. Far too often, individual victims and our society have suffered from juveniles who initiate even the vilest of crimes without the slightest direct assistance from their elders. This assertion is knowable from the juvenile cases brought before this court. Generalized knowledge of frequent patterns of how adults use juveniles in drug transactions cannot be a substitute for proof. It may well be that adults often use juveniles as covers for their control of drugs, but I believe the law requires the relationship between the two must be proven and not assumed.

In short, I do not believe that the majority's conclusion, much less control over the drugs, can be rationally inferred from the mere fact alone that appellant was an adult, and the transferor, a juvenile. The State has the burden to prove control, and must do so, by competent evidence.

Finally, ignoring any analysis of the relationship between appellant and the juvenile, is there any evidence that appellant exercised indirect control over the drugs?

The majority distinguishes *Davila* on the grounds that Mrs. Davila did not indicate to the undercover officers that she personally was selling drugs, whereas the appellant in this case did. This distinction is sound if the evidence suggested by the majority as present in this case, but absent from *Davila*, is relevant to the issue of control and is sufficient in itself, or in combination with other evidence, to prove control beyond a reasonable doubt.

The officer testified that the hand and head gestures made by the four individuals on the street, including appellant, were an indication to him that they "probably wanted to make a transaction." "Well, it's common knowledge, if you work undercover, that if they give you some kind of head gesture, that they are selling drugs."

Assuming that such a generalized, subjective, judgment is probative of the fact that an individual is selling drugs, is it relevant to the issue of control under the facts of this case? Is evidence of a person indicating a desire to sell drugs the same thing, and a substitute for evidence of a person controlling the drugs being sold? The majority apparently concludes that it is, but I think not. Whatever the importance of the hand and head gestures as indicating a person is selling drugs, the other two members of the group the officer testified were making the signs were released at the scene and not charged.

The majority also seems to hint without directly saying that the affirmative acts of appellant (approaching the undercover officer, directing him to park, and asking him what he wanted), is contrasted from Mrs. Davila's more passive actions. The evidence in *Davila* however, indicates Mrs. Davila asked the undercover officer what he wanted as did appellant. The evidence in *Davila* does not indicate whether she got off the sofa where she was sitting and "approached" the officer before making the inquiry, or whether she instructed the officer to sit down (to park) while she left to transmit the information to the person with the drugs. I do not understand how the majority's highlighted facts distinguish *Davila* in any determinant sense.

The majority also cites *Woods v. State*, 734 S.W.2d 414 (Tex.App.—Houston [1st Dist.] 1987, *vacated and remanded on other grounds*, 758 S.W.2d 285 (Tex.Crim.App. 1988), as holding there was sufficient evidence of constructive delivery where the suspect initiated, and was present during the transaction, even though he did not hand over the contraband or accept the money. The actual holding of the case was that Woods was guilty of a constructive transfer as a party to the sale. Nowhere does our court say that Woods was guilty of the constructive transfer, or that Woods exercised any control over the drugs, con-

structively or otherwise. Factually Woods stands in the same shoes as appellant in this case, but here, the law of parties was not applied. The First Court stated through the Honorable Jack Smith:

"It is evident that appellant (Woods) had relayed Reeves' (the undercover officer) request for cocaine to Stevenson, because Stevenson was aware when Reeves entered the apartment how much cocaine she wanted to purchase. Stevenson constructively transferred the cocaine to Reeves by entrusting it to Jackson, and ordering him to make the transfer to Reeves."

There is no evidence in this case that appellant entrusted cocaine to the juvenile or ordered him to make the transfer. The judge in this case might well have found appellant guilty as a party to an actual, rather than constructive, transfer of drugs by the juvenile, but that finding is not synonymous in evidentiary burden with guilt by constructive transfer. The *Davila* court also notes the absence of the appellant therein not being charged with being a party to the transfer. *Davila* at 724. The holding in *Woods* also supports reversal of the case before us.

The majority indicates appellant is guilty as a party. I find nothing in the transcript to indicate appellant was found guilty as a party. Finally, one cannot be a party to a constructive transfer and a principal in a constructive transfer at the same time. Each concept requires a different burden of evidence for the State to meet.

I find no distinction between this case and *Davila*. Accordingly, I would reverse the judgment of the trial court, and order the appellant acquitted.