**Gaspar CORNEJO, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–92–00719–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

June 17, 1993.

Discretionary Review Refused Oct. 20, 1993.

Will Gray, Nick Malavis, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Carol M. Cameron and Denise Oncken, Asst. Attys., Houston, for appellee.

Before OLIVER–PARROTT, C.J., and COHEN and MIRABAL, JJ.

## OPINION

MIRABAL, Justice.

The trial court found appellant, Gaspar Cornejo, guilty of delivery of a controlled substance, namely, cocaine, weighing at least 400 grams. The trial court assessed punishment at 15–years confinement and a fine of $1. We affirm.

In his sole point of error, appellant contends the evidence is insufficient to support his conviction.

In reviewing the sufficiency of the evidence to support a conviction, the evidence is viewed in the light most favorable to the judgment. *Flournoy v. State,* 668 S.W.2d 380, 383 (Tex.Crim.App.1984). The critical inquiry is whether, after viewing the entire body of evidence in the light most favorable to the judgment, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see also Sharp v. State,* 707 S.W.2d 611, 614 (Tex. Crim.App.1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). The standard of review is the same for both direct and circumstantial evidence. *Geesa v. State,* 820 S.W.2d 154, 162 (Tex.Crim.App. 1991); *Sutherlin v. State,* 682 S.W.2d 546, 548–49 (Tex.Crim.App.1984).

The evidence, viewed in the light most favorable to the judgment, follows.

In March of 1991, Houston Police Officer Steven C. Riegle was assigned to SWAT detail at the West Side Tactical Unit. Riegle received information from a confidential informant, known as Sammie, that an individual had a stolen a Mustang and had a kilo of cocaine to sell. Because the amount of cocaine was so large, Riegle sought assistance from one of the downtown HPD officers, Officer Scott, and arranged a meeting between Scott and the confidential informant. After Riegle introduced Scott to the informant, Riegle was basically out of the investigation except for the arrest. On March 24, 1991, Riegle was part of the team that arrested appellant for delivering a controlled substance to Scott. The substance field tested positive for cocaine.

Claudia Busby, a chemist with the City of Houston Police Department crime laboratory testified that the substance was 944 grams of 70.2 percent cocaine.

Houston Police Officer Guy Hardy, of the West Side Command Station Division of the Tactical Canine Drug Unit, testified that he worked with Scott in the investigation of the case. On March 22, 1991, he set up surveillance on a "flash" of money. Hardy observed Scott flash money to the confidential informant and another gentleman, who he

later came to know as Johnny Betancur, at a Stop and Go on Fondren and Bellaire. Hardy then followed Betancur to an apartment at 8100 Sandspoint # 3404. Betancur entered the apartment and approximately five minutes later exited with another Hispanic male, who Hardy later came to know as Gaspar Cornejo, appellant.

Houston Police Officer Rusty Scott, with the narcotics division, testified that in March of 1991, Officer Riegle contacted him, seeking assistance with a major investigation of a large amount of cocaine. On March 21, 1991, Riegle introduced Scott to a confidential informant. Scott, the informant, and Betancur were to meet at a Two Pesos restaurant the following evening; however, Betancur did not show. Around 11:00 a.m. on March 22, 1991, Scott, the informant, and Betancur met at the Stop and Go. Scott agreed to buy a kilo of cocaine from Betancur for $18,000 and gave Betancur his beeper number.

Scott and the informant left the Stop and Go and went to the Jack-in-the-Box. At that restaurant, Scott was paged. Scott answered that page and spoke with Betancur. They agreed to meet at 2:30 that afternoon at the Taco Cabana to do the deal. Scott returned a second page and spoke with a man, who identified himself as Eto; later Scott came to know that Eto was appellant. Appellant told Scott that they could do business. For a little over an hour, Scott waited for the men at the Taco Cabana, but no-one appeared. Around 6:00 that evening, Betancur called Scott, and they agreed to meet around 7:00 p.m., but again, no one showed. Scott was paged around 10:00 p.m., and when Scott returned the call, he spoke with appellant. Appellant told him that they could still do business, and they discussed meeting at a Shell station the next day.

The next day, March 23, 1991, Scott was paged. He talked to appellant and Betancur. They agreed to meet at the Shell station at 3:15 or 4:00 that afternoon. Again, no one appeared. Appellant paged Scott around 6:00 p.m., wanting to do business. Scott refused and told appellant to call the next day.

Around 10:00 the next morning, March 24, 1991, Scott called the number he had been calling and talked to appellant. They decided to do the deal that afternoon between 3:00 and 4:00 at the Shell station. Betancur paged Scott around 11:00 a.m., and they confirmed the deal.

Appellant and Betancur drove into the station in a van. Appellant drove the van past Scott's car. Everyone exited their vehicles, and appellant asked Scott if he had the money. Betancur came around to the back of the car and said "let's do the deal." Scott told appellant to get back inside the van; Scott was concerned for his own safety and wanted to deal with one, not two men. When appellant returned to the van, Scott and Betancur got inside Scott's car. Scott gave Betancur the money to count, and Betancur gave him the cocaine. After receiving the cocaine, Scott gave the bust signal. The arrest team moved in and arrested appellant and Betancur.

Appellant testified that he only spoke with Scott once, on March 22, 1991. He denied ever paging Scott or setting up a deal. On the 22nd, Scott called and asked for Betancur. Scott told appellant that Betancur did not come, and appellant replied he did not know what Scott was talking about. Scott called appellant a liar, and appellant told Scott not to call and yell at him about problems he had with Betancur.

Appellant stated that Betancur called him on the morning of March 24, 1991, wanting a ride back from Galveston. Appellant asked his father if he could use the van, but his father refused because it was out of gas. Betancur's uncle gave appellant five dollars for gas. Appellant borrowed his brother Gabriel's Toyota and drove to Galveston with his brother Eric. Eric tried to fix Betancur's car, but could not. Therefore, appellant and Eric brought Betancur and his friends back to Houston. Appellant dropped off the friends, and returned home around 12:15 or 12:30 that afternoon.

Around 3:00 p.m., appellant's father awakened him and told him to take the van and pick up Betancur's car in Galveston. Appellant and Betancur drove approximately 25 to 30 minutes to a Shell station, and pulled up to the air hoses. As he was putting air in the

tire, he saw Scott by the coke machines, and Betancur introduced appellant to Scott. Appellant denied asking Scott for money, but told Betancur to remember to get money for gas. Betancur told appellant to pull the car up, and when he returned to inflate the tire, he was arrested. Appellant did not know that Betancur had cocaine or that he intended to sell cocaine. Appellant testified he did not use or sell cocaine.

Appellant further testified that Betancur apologized for getting him into trouble, then asked appellant to take the blame for the sale. Betancur told appellant that because he did not have a record, he would probably get probation.

Betty Ann Cornejo, appellant's mother, testified that before appellant was arrested, she received from 10 to 12 phone calls from a person identified as Chris.[1] Scott called on her sons' telephone line and asked for appellant and Betancur. Betancur, a friend of her son Gabriel, did not live at her family's apartment. Ms. Cornejo stated that Scott was rude, and she asked him not to call anymore. On March 24, 1991, the day of appellant's arrest, around 6:00 a.m., her sons received a phone call and went to Galveston to pick up Betancur. Appellant and one of her other sons brought Betancur and some of his friends back from Galveston around noon. Betancur asked her husband if he could borrow their van to tow his car back from Galveston. Ms. Cornejo stated that the van was out of gas and that neither she nor Betancur had money to put gas into the van. When Betancur told them that a friend would loan him money for gas, her husband permitted him to use the van on the condition that appellant accompany him to Galveston.

Appellant's father, two brothers, and a friend each testified that, on March 24, 1991, Betancur's car in Galveston was not working, and Betancur asked appellant and his family for help. Appellant's father gave Betancur permission to borrow the family van, as long as appellant accompanied him.

The elements of the offense of delivery of a controlled substance are: 1) a person, 2) knowingly or intentionally, 3) delivers, 4) a controlled substance. *Stewart v. State,* 718 S.W.2d 286, 288 (Tex.Crim.App.1986); *Swinney v. State,* 828 S.W.2d 254, 256 (Tex. App.—Houston [1st Dist.] 1992, no pet.); Tex.Health & Safety Code Ann. § 481.112(a) (Vernon 1992). Delivery may be effectuated by an actual transfer, a constructive transfer, or an offer to sell. *Daniels v. State,* 754 S.W.2d 214, 217 (Tex.Crim.App.1988); *Swinney,* 828 S.W.2d at 257; Tex.Health & Safety Code Ann. § 481.002(8) (Vernon 1992).

Appellant contends that the evidence is insufficient to show that he actually or constructively delivered cocaine to Scott, or that he offered to sell cocaine to Scott. The State replies that the evidence was sufficient to support a conviction under the law of parties for delivery of cocaine by an actual transfer and an offer to sell.

An actual transfer occurs when a person transfers actual possession and control of a controlled substance to another person. *Thomas v. State,* 832 S.W.2d 47, 51 (Tex. Crim.App.1992). The evidence shows that Betancur, not appellant, actually delivered the cocaine. However, the evidence is sufficient to support appellant's conviction under the law of parties.

The Texas Penal Code states that a party may be criminally responsible for an offense if while "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid" another person committing an offense. Tex.Penal Code Ann. §§ 7.01 & 7.02(a)(2) (Vernon 1974). Evidence is sufficient to support a conviction under the law of parties where the actor is physically present at the commission of the offense, and encourages the commission of the offense either by words or other agreement. *Burdine v. State,* 719 S.W.2d 309, 315 (Tex.Crim.App.1986). The evidence must show that at the time of the offense, the parties were acting together, each contributing some part towards the exe-

---

1. In the investigation, Officer Scott used the code name Chris. For simplicity, when Ms. Cornejo refers to Chris, we will use Scott's correct name.

cution of their common purpose. *Id.* In determining whether a defendant participated in an offense as a party, the court may examine the events occurring before, during, and after the commission of the offense, and may rely on actions of the defendant which show an understanding and common design to commit the offense. *Id.*

According to Officer Scott, appellant participated in several telephone conversations regarding the sale. Appellant told Scott that they could do business, and appellant agreed to meet Scott at the Shell station. Appellant drove Betancur to the station, identified himself as Eto, and asked Scott whether he had the money. Appellant was not inside Scott's car when Betancur transferred the cocaine, only because of Scott's concern for his own safety.

All of appellant's witnesses' testimony conflicted with Scott's. However, the trial judge, as the sole trier of fact, could believe Scott's, and not the other witnesses', testimony. *See Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990); *Santos v. State*, 822 S.W.2d 338, 339 (Tex.App.—Houston [1st Dist.] 1992). We hold the evidence was sufficient to support appellant's conviction under the law of parties. Accordingly, we overrule appellant's sole point of error.

We affirm the judgment.