Leon Wilburn, Jr. v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-266-CR

LEON WILBURN, JR. APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

OPINION

------------

I.  Introduction

Appellant Leon Wilburn, Jr. appeals his conviction for delivery of a controlled substance in an amount of one gram or more but less than four grams.  A jury found Wilburn guilty and assessed his punishment at forty-five years’ confinement.  In three points, Wilburn complains that the evidence is legally and factually insufficient to establish that he delivered a controlled substance by constructive transfer and that the application portion of the jury charge is erroneous.  We will affirm.

II.  Factual and Procedural Background

The Fort Worth Police Department received numerous complaints concerning narcotics activity on Loving Avenue.  In response, a narcotics unit set up a hidden surveillance camera and arranged for undercover police officers to purchase drugs, in an effort to videotape the drug transactions.  One such transaction occurred on December 11, 2001.  

On December 11, 2001, Officer Dennis Alise videotaped Officer J.R. McCauley as he drove up to 3004 Loving Avenue.  Wilburn, who had been sitting on the front porch of the residence, met Officer McCauley in the residence’s front yard and asked him what he needed.  Officer McCauley responded that he wanted “three quarters,” the street term for three, twenty-five dollar pieces of crack cocaine.  Officer McCauley said that Wilburn appeared to understand Officer McCauley’s request and instructed Officer McCauley to follow him into the residence, but to remain standing just inside the front door.

Following Wilburn’s directions, Officer McCauley stood just inside the residence’s front door.  From there he observed Wilburn go to the kitchen and speak with a man later identified as Kenneth Hogg, although Officer McCauley was unable to hear the conversation.  Hogg then walked out of the kitchen, approached Officer McCauley, and handed Officer McCauley three twenty-five dollar rocks of crack cocaine.  Officer McCauley handed Hogg seventy-five dollars, exited the residence, got in his car, and drove away. 

Wilburn pleaded not guilty to the charges of delivery of a controlled substance of one gram or more, but less than four grams, by constructive transfer and delivery of a controlled substance of one gram or more, but less than four grams, by actual transfer.  The trial court granted Wilburn’s motion for an instructed verdict as to paragraph two of the indictment, which charged Wilburn with delivery of the controlled substance by actual transfer.  A jury subsequently convicted Wilburn of constructively transferring the controlled substance.  This appeal followed.

III.  Constructive Transfer

In his first and second points, Wilburn argues that the evidence is both legally and factually insufficient to support the jury’s finding that he delivered a controlled substance by constructive transfer. 

A. Sufficiency Standards of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Ross v. State
, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  The trier of fact is the sole judge of the weight and credibility of the evidence.  
See
 Tex. Code Crim. Proc. Ann.
 art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the evidence in favor of the verdict.  
Curry v. State
, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In contrast, in reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
.    In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for that of the fact finder’s.  
Zuniga, 
144 S.W.3d at 482.  

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

B.  Wilburn Constructively Transferred Cocaine

The offense of delivery of a controlled substance is defined as follows: “Except as authorized by this chapter, a person commits an offense if the person knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance listed in Penalty Group 1.”  
Tex. Health & Safety Code Ann.
 § 481.112(a) (Vernon 2003).  “‘Delivery’ means to transfer, actually or constructively, to another a controlled substance, counterfeit substance, or drug paraphernalia, regardless of whether there is an agency relationship.”  
Id.
  
§ 481.002(8).  “Transfer” has been defined as “a voluntary relinquishment of possession in favor of another.”  
See Thomas v. State, 
832 S.W.2d 47, 51 (Tex. Crim. App. 1992).  Finally, a constructive transfer is “the transfer of a controlled substance either belonging to an individual or under his control by some other person or agency at the instance or direction of the individual.”  
Rassmussen v. State,
 608 S.W.2d 205, 209 (Tex. Crim. App. [Panel Op.] 1980).  To effectuate a constructive transfer, the defendant must know of the existence of the ultimate transferee.  
See Daniels v. State, 
754 S.W.2d 214, 221-22 (Tex. Crim. App. 1988); 
Gonzalez v. State,
 588 S.W.2d 574, 577 (Tex. Crim. App. [Panel Op.] 1979).    

The trial court’s charge to the jury used the definitions articulated above. Therefore, in order to convict Wilburn, the jury was required to find (1) that the cocaine was under Wilburn’s direct or indirect control; (2) that the cocaine was transferred at Wilburn’s instance or direction; and (3) that Wilburn knew of Officer McCauley’s existence.

In considering the third element—whether Wilburn knew of Officer McCauley’s existence—Wilburn met Officer McCauley in the front of the residence on Loving Avenue and asked him what he needed.  When Officer McCauley responded that he needed three quarters, Wilburn led Officer McCauley into the residence and spoke with Hogg, and Hogg handed Officer McCauley three quarters.  Officer McCauley testified that Wilburn remained in the residence while Hogg gave him the cocaine.  Thus, legally and factually sufficient evidence exists to establish that Wilburn knew of Officer McCauley’s existence as the ultimate transferee.  
See Daniels, 
754 S.W.2d at 221-22. Moving to the first and second elements of a constructive transfer, Wilburn argues that “[t]here is clearly no evidence that Mr. Wilburn had control over Hogg’s actions, and no evidence that Mr. Wilburn directly or indirectly controlled the cocaine prior to its delivery.”  However, the facts supporting the jury’s finding that Wilburn did exercise control over the cocaine and over Hogg’s actions are similar to the facts supporting like findings in 
Hubbard v. State 
and in 
Swinney v. State
.  
See
 
Hubbard, 
896 S.W.2d 359, 360-61 (Tex. App.—Houston [1st
 Dist] 1995, no pet.); 
Swinney
, 828 S.W.2d 254, 256 (Tex. App.—Houston [1st Dist] 1992, no pet.).
 
  

In 
Hubbard, 
a police officer was standing outside a convenience store when Hubbard approached him and asked what he was looking for.  
896 S.W.2d at 360-61.  The officer said that he wanted to buy twenty dollars worth of crack cocaine.  
Id
. at 361.  Hubbard whistled to an individual across the street, the individual approached, and Hubbard stated to him that the officer was interested in buying drugs.  
Id
.  A transaction occurred, and Hubbard and the actual transferor left together.  
Id
.  The court held that the evidence was sufficient to support Hubbard’s conviction on the basis that he constructively transferred the cocaine to the officer.  
Id
. at 363.  Specifically, in addressing the issue of control, the court focused on the facts that Hubbard initiated contact with the officer and remained at the scene during the delivery.  
Id
. at 362-63.

In 
Swinney
, an undercover police officer was driving in an automobile when Swinney and three other individuals, standing on the side of the road, made head and hand gestures towards him.  
828 S.W.2d at 256.  Swinney approached the car and asked the officer what he needed.  
Id
.  The officer responded that he needed a twenty-dollar rock, and Swinney went back to the group of individuals he was standing with and spoke with them.  
Id
.  Swinney accompanied one of the individuals to the officer’s car; that individual entered the officer’s car on the passenger side while Swinney remained standing in between the open door and the outside of the car.  
Id
.  The individual asked the officer how many he needed, the officer said just one, and a drug transaction occurred.  
Id
.  The reviewing court held that the evidence was sufficient to support the jury’s finding that Swinney constructively transferred the cocaine.  
Id
. at 258.

Here, Officer McCauley approached the residence and was met by Wilburn in the front yard area.  Wilburn initiated the conversation and asked what Officer McCauley needed. 
 Wilburn then directed Officer McCauley to follow him into the residence and to wait inside the front door while he went to speak with Hogg.  Hogg, the actual transferor, did not speak to Officer McCauley when he gave Officer McCauley the cocaine.  Instead, after speaking with Wilburn, Hogg approached Officer McCauley and handed him three quarters without saying a word.  Hogg did not ask Officer McCauley what he wanted.  
Officer McCauley testified,

Q: [Prosecutor] Did you ever speak to Kenneth Hogg about what you wanted?

A: [Officer McCauley] No, sir.

Q: [Prosecutor] So you never told him you wanted three quarters?

A: [Officer McCauley] 
No, sir.

Q: [Prosecutor] He just came out with that?

A: [Officer McCauley] Yes, sir.

Q: [Prosecutor] And that was after Mr. Wilburn talked to him?

A: [Officer McCauley] Yes, sir.

Moreover, Hogg transferred the three quarters to Officer McCauley before Officer McCauley turned over the seventy-five dollars to Hogg.  It is evident that Hogg knew exactly what Officer McCauley desired to purchase.  Additionally, 
Wilburn remained in the vicinity of the transaction
; he remained in the kitchen and did not leave the residence or go to a different portion of the home while Hogg gave the cocaine to Officer McCauley.  Accordingly, it is reasonable to assume that if Officer McCauley from his vantage point inside the front door could see Wilburn speaking to Hogg in the kitchen then from the kitchen Wilburn could see Hogg giving the cocaine to Officer McCauley just inside the door.  Finally, Officer McCauley testified that he had no doubt from the manner in which the events transpired that Wilburn had directed Hogg to deliver the three rocks.  Officer McCauley testified on cross-examination as follows:

Q: [Defense Attorney] You are telling us today that there isn’t even a certain amount of supposition on your part in regards to whether Leon Wilburn directed Hogg to give you the drugs?

A: [Officer McCauley] That’s correct.

Q: [Defense Attorney] That is - - there is no doubt in your mind?

A: [Officer McCauley] That’s correct.

Q: [Defense Attorney] And that is entirely based upon the fact that you said something to Leon as you were walking in the house and that a transaction happened after that?

A: [Officer McCauley] That‘s correct.

. . . .

Q: [Defense Attorney] The middle part is not supposition on your part?

A: [Officer McCauley] It’s common sense.  If I ask for three crack rocks and another guy comes and brings them to me, and I didn’t talk to that second person that he had to know it somehow without reading minds.

Thus, similar to the situations discussed above in 
Hubbard 
and 
Swinney
, Wilburn remained near the transaction at the time it was made and exhibited his authority over the drugs and over the actual transferor, Hogg. 

Wilburn relies on 
Davila v. State
, 
Dawson v. State, 
and 
Moncivalles v. State 
to support his contention that the evidence is legally and factually insufficient to establish that he constructively transferred the cocaine to Officer McCauley.  
See Davila v. State
, 664 S.W.2d 722 (Tex. Crim. App. 1984);  
Dawson v. State
, 812 S.W.2d 635, 636 (Tex. App.—Houston [14th Dist.] 1991, pet ref’d); 
Moncivalles v. State, 
733 S.W.2d 601, 603 (Tex. App.—San Antonio 1987, pet. dism’d, improvidently granted).  The facts in 
Davila
, 
Dawson
, and 
Moncivalles
, differ, however, from the present facts.

In 
Davila
, an undercover officer-agent and an unidentified informant entered a residence and spoke with Davila.  
664 S.W.2d at 723
.  Davila asked what they wanted and then went outside to speak with Cosme, the actual transferor.  
Id
.  Davila returned to the inside of the residence and sat on the couch.  
Id
.  Shortly thereafter, Cosme entered the residence and asked, “How many do you want” or “What do you want,” the officer repeated his request, and Cosme handed over the drugs in exchange for money.  
Id
.  The Court of Criminal Appeals affirmed the Amarillo Court of Appeals’s decision holding the evidence insufficient to establish that Davila constructively transferred the narcotics. 
Id
. at 725.  The Court of Criminal Appeals explained, 
“At most the evidence shows that appellant merely relayed Chism’s offer to buy to her husband Cosme.”  
Id
. at 724. 
   

Wilburn overlooks a number of factual distinctions between this case and 
Davila
.  In 
Davila
, unlike here, the 
officer entered the residence without the constructive transferor’s assistance.  Davila, unlike Wilburn, did not speak with the undercover officer outside the house or direct the officer to the interior of the residence.  
In 
Davila, 
unlike here, 
the actual transferor expressly asked the officer what he desired to purchase.  
See 
664 S.W.2d at 723.  Here, as set forth above, Hogg already knew and understood what Officer McCauley wanted to purchase.  Hogg did not speak to Officer McCauley at all.  
Significantly, these facts and those discussed above do not support the conclusion that Wilburn “merely relayed” Officer McCauley’s request to Hogg.  
See id. 
at 724.
 In 
Dawson v. State
, officers approached Dawson and asked where they could get a twenty-dollar “rock” of cocaine.  
812 S.W.2d at 636.  Dawson led them to a tin shack where an individual, Jenkins, sat inside.  
Id
.  All of them entered, and the officers purchased cocaine from Jenkins.  
Id
.  Soon thereafter, other officers arrived and arrested everyone inside.  
Id
.  The appellate court held that there was no evidence that Dawson exercised any control over the drugs.  
Id
. at 637.

In 
Moncivalles
, Gonzales led an undercover officer to a house and yelled out for “Tootie.”  
733 S.W.2d at 603
.  Moncivalles appeared and asked the officer what he wanted, and the officer said he wanted to score “80" (eighty dollars’ worth of heroin).  
Id
.  Moncivalles took the money back into the house, but a different individual came out and handed the drugs to the officer.  
Id
.  The appellate court held that the evidence failed to establish that the heroine was under Moncivalles’s control or that the person who delivered it to the officer was acting under Moncivalles’s direction.  
Id
.  

The facts in 
Moncivalles 
and 
Dawson 
are distinguishable from the present facts.  Unlike in 
Dawson
, where Dawson led the officers into the tin shack but the transaction occurred exclusively between Jenkins and the officers, here Wilburn spoke to Hogg and communicated Officer McCauley’s request to Hogg.  In contrast to 
Moncivalles
, where it was not shown that Moncivalles ever spoke to the individual who returned from the house with the drugs, Officer McCauley observed Wilburn approach Hogg and speak to Hogg.  Hogg then approached Officer McCauley, and the drug transaction took place.

The present facts are more like the facts in 
Hubbard
 and 
Swinney
 than like the facts in 
Davila
, 
Dawson
, and 
Moncivalles
.  For the reasons articulated above, viewing the evidence under the appropriate standards of review, it is legally and factually sufficient to establish the first and second elements of a constructive transfer by Wilburn to Officer McCauley:  that the cocaine was under Wilburn’s direct or indirect control and that the cocaine was transferred at Wilburn’s instance or direction.  
See Daniels
, 754 S.W.2d at 221-22; 
see also
 
Jackson v. State
, 84 S.W.3d 742
, 743 (Tex. App.—Houston [1st Dist.] 2002, no pet.).
 
  

Viewing the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  Furthermore, viewing all the evidence in a neutral light, favoring neither party, we also conclude that the evidence supporting the verdict, taken alone, is not too weak to support the finding of guilt beyond a reasonable doubt and that the contrary evidence is not so strong that guilt cannot be proven beyond a reasonable doubt.  
Zuniga
, 144 S.W.3d at 481.  Accordingly, we hold that the evidence is both legally and factually sufficient to support Wilburn’s conviction for 
delivery of a controlled substance of one gram or more, but less than four grams, by constructive transfer.  We overrule Wilburn’s first and second points.
 

IV.  Jury Charge

In his third point, Wilburn argues that the trial court erred in its charge to the jury.  Specifically, Wilburn complains that “[t]he trial court failed to completely instruct the jury in the application paragraph at guilt/innocence on the necessary elements to establish delivery by constructive transfer.” 
 
The State contends that Wilburn did not suffer egregious harm from the alleged charge error.

When examining alleged jury charge error, we first look to see if the error actually occurred and if the error was preserved.  
See Hutch v. State
, 922 S.W.2d 166, 170-71 (Tex. Crim. App. 1996).  Preserved error warrants reversal if any harm is shown.  
Id
.  On the other hand, if the alleged error is raised for the first time on appeal, then the appellant must show that the harm resulting from the error was egregious, or so harmful that the appellant was denied a fair and impartial trial.  
Id. 
at 171; 
Almanza v. State
, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh’g).

The function of the jury charge is to instruct the jury on the law applicable to the case.  
Dinkins v. State
, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995).  When reviewing the charge for alleged error, we examine the charge as a whole, considering the relationship between the abstract and application portions of the charge.  
See Caldwell v. State, 
971 S.W.2d 663, 666 (Tex. App.—Dallas 1998, pet ref’d).

Wilburn argues that the “application paragraph did not include all the necessary elements of constructive delivery.”  
The Court of Criminal Appeals has stated, “It is axiomatic that when required elements of an offense are omitted from a charging instrument, such omissions will render a conviction fatally defective.”  
Doyle v. State
, 631 S.W.2d 732, 735 (Tex. Crim. App. [Panel Op.] 1982) (op. on reh’g).  It continued, “We believe that it logically follows that when a trial court omits from the application paragraph of the charge required elements of an offense, this also will render a conviction fatally defective.”  
Id
. 

Here, the relevant part of the abstract portion of the jury charge stated, “‘Deliver[y]’ means to transfer, actually or constructively, to another a controlled substance, regardless of whether there is an agency relationship.” The charge continued, 

A “constructive transfer” of a controlled substance, as used herein, means the transfer from one person to another of a controlled substance, either belonging to the person charged or under his direct or indirect control, by some other person or manner, at the instance or direction of the person charged.  In order to establish a constructive transfer by the person charged to some other person, it must be shown that, prior to the alleged delivery, the transferor must have either direct or indirect control of the substance transferred and that the transferor knew of the existence of the transferee. 

The application portion of the jury charge stated,

Now, if you find from the evidence beyond a reasonable doubt that the Defendant, Leon Wilburn, Jr., in the County of Tarrant and State of Texas, on or about the 11th day of December, 2001, did then and there intentionally or knowingly deliver to J.R. McCauley a controlled substance, namely: Cocaine, of one gram or more, but less than four grams, including any adulterants or dilutants, by constructively transferring said controlled substance to another person and the Defendant, Leon Wilburn, Jr., knew that J.R. McCauley was the transferee, or if you find that acting with intent to promote or assist the commission of the offense, the Defendant solicited, encouraged, directed, aided or attempted to aid another person to commit the offense, then you will find the Defendant guilty of the offense of Delivery of a Controlled Substance, namely: Cocaine, of one gram or more, but less than four grams, including any adulterants or dilutants, by constructively transferring said controlled substance, as charged in the Indictment.

Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the Defendant and say by your verdict “Not Guilty.”

Wilburn was charged with delivery of a controlled substance 
of one gram or more, but less than four grams, by constructive transfer.  The crime alleged in the indictment was delivery of a controlled substance.
(footnote: 1)  The method of delivery was by constructive transfer.  “Constructive transfer” is a term of art that falls within the statutory definition of “delivery” as it relates to controlled substances.  
See Moore v. State
, 82 S.W.3d 399, 408 (Tex. App.—Austin 2002, pet. ref’d).  As such, “constructive transfer” is not an independent crime that requires that all elements composing the definition to be alleged in the application portion of the jury charge.  
See Doyle
, 631 S.W.2d at 735.  Rather, it is an element itself, specifically, a form of delivery that is part of the crime alleged—delivery of a controlled substance.
(footnote: 2)  

Examining the application portion of the jury charge, we recognize that all the elements of the alleged crime are present.  Additionally, the trial court correctly defined “constructive transfer” in the abstract portion of the charge. It was not mandatory to include the definition, or “elements” as Wilburn argues, of constructive transfer in the application portion of the charge.  
See Bedford v. State
, 666 S.W.2d 574, 575-76 (Tex. App.—Houston [1st Dist.] 1984, pet. ref’d).  As the court in 
Bedford 
stated,

The purpose of the application paragraph is to properly apply the law to the facts of a case. . . . To require that all abstract definitions be contained within the application paragraph would tend to confuse the jury and obscure the issues, although the better procedure would be to include a phrase such as “as defined herein”, as suggested by the Texas Court of Criminal Appeals in 
Rider v. State
, 567 S.W.2d 192 (Tex. App. 1978).”
     

Id.
 at 576.
(footnote: 3)  

Wilburn argues that this case is similar to 
Daniels
.  
See Daniels
, 754 S.W.2d at 222.  There, the Court of Criminal Appeals affirmed the intermediate court of appeals’s decision holding that the jury charge caused appellant to suffer egregious harm because it permitted the jury to convict on a theory not alleged in the indictment.  
Daniels 
is inapposite.  Here, the charge tracked the language of the indictment, which alleged delivery by constructive transfer.  We hold that the trial court did not err by omitting the definition of “constructive transfer” from the application portion of the jury charge.  Accordingly, we overrule Wilburn’s third point.

V.  Conclusion

Having overruled all of Wilburn’s points, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL A: CAYCE, C.J.; HOLMAN and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: February 10, 2005

FOOTNOTES
1:
The indictment alleges that Wilburn did “then and there intentionally or knowingly deliver to J.R. McCauley a controlled substance, namely cocaine of one gram or more but less than four grams, including any adulterants or dilutants, by constructively transferring said controlled substance.” 

2:
The State may prove 
delivery 
by an actual transfer, constructive transfer, or an offer of sale.  
See 
Tex. Health & Safety Code Ann.
 § 481.002(8).

3:
See also Rollins v. State
, No. 14-94-00144-CR, 1996 WL 42040 (Tex. App.—Houston [14th Dist.] 1996, no pet.) (not designated for publication) (holding that definition of “criminal negligence” need not be provided in application portion of jury charge when it immediately preceded the application paragraph).