In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-06-01055-CR

NO. 01-06-01056-CR

____________


KENNETH DEWAYNE HAYES, Appellant

 

V.


THE STATE OF TEXAS, Appellee






On Appeal from the 56th District Court of

Galveston County, Texas

Trial Court Cause Nos. 04CR3201 and 04CR3202





O P I N I O N


 Appellant, Kenneth Dewayne Hayes, was charged by indictments with two
felony offenses of delivery of a controlled substance, cocaine, by constructive transfer
and in an amount of one gram or more but less than four grams. (1) See Tex. Health
& Safety Code Ann. § 481.112 (Vernon 2003). The offenses took place on a single
day within a short time of each other and resulted from transfers to undercover agents
of the federal Drug Enforcement Agency (DEA). The jury found appellant guilty in
both offenses, as charged in the indictments and under jury charges that authorized
conviction under the law of parties, and the trial court assessed punishment at two,
concurrent prison sentences of ten years each. Appellant challenges the legal
sufficiency of the evidence in both causes and claims egregious charge error in Cause
No. 01-06-01056-CR. We affirm in Cause No. 01-06-01056-CR, and we reverse and
render a judgment of acquittal in Cause No. 01-06-01055-CR. 

Background


 In 2004, the City of Dickinson Police Department enlisted the assistance of the
DEA to investigate and to prosecute drug trafficking in the city. On June 10, 2004,
DEA Agents R. Hall and E. Williams were on duty and investigating narcotics
activity undercover from a sports-utility vehicle (SUV) equipped with audio and
video monitoring devices. At around 2:30 p.m., Agent Williams drove the SUV to
a Coastal gas station and parked in its parking area. Agent Hall was seated in the
front passenger seat of the SUV. Other law-enforcement officers of the City of
Hitchcock and DEA were in the area conducting surveillance. 

 A. Cause No. 01-06-01056-CR

 Agents Hall and Williams observed a few men and a woman lingering under
the shade of a tree near the Coastal station. Several of the men were straddling
bicycles. While the agents were parked and waiting, two of the men drove their
bicycles closely by the agents' SUV. One of these men retrieved an article from the
rear bed of a nearby pickup truck before leaving the area of the agents' truck. One
of the men, later identified as Terrence Walker, and the woman, later identified as
Yvette Jackson (Yvette), looked over to the agents as they sat in the SUV. After
about five minutes, Yvette responded to Agent Hall's beckoning gesture by
approaching the passenger side of the SUV. Agent Hall asked her if anyone was
selling drugs that day. Yvette initially replied that she was unfamiliar with the two
agents and voiced concern that they might be police officers, but when Agent Hall
asked if she could provide $200 worth of rock cocaine, Yvette told the officers to
wait and walked back to Walker. 

 Yvette spoke briefly with Walker, and they walked together to a green Toyota
Camry parked at a gas pump, where appellant had been pumping gas. The Camry
later proved to be registered to appellant, whom Agent Hall positively identified at
trial. After both Walker and Yvette interacted with appellant near his Camry,
appellant got into the driver's seat and Walker got into the passenger seat of the
Camry, and they drove out of the gas station together. Yvette then walked back to the
agents' SUV, where she reported that "they (appellant and Walker) were going to get
the drugs" and would return soon. Yvette stayed by the agents' SUV making small
talk with them as they waited. 

 Appellant returned to the gas station in the green Toyota Camry about five
minutes later, this time with Gaines as a passenger. Yvette left her position by the
agents's SUV at that point and walked over to the Toyota, where she communicated
with both appellant and Gaines, and then returned to the agents' SUV. Appellant
drove the Camry away yet again. When he returned, he parked the Camry to the right
of the agents' SUV and slightly behind it. 

 Yvette returned to the Camry at that point and got into its rear passenger seat
behind appellant. Yvette stayed in the Camry only briefly. After speaking to
appellant and Gaines, she returned to the agents' SUV and entered the rear passenger
seat behind Agent Williams, on the driver's side of the vehicle. At that point,
appellant advanced his Camry forward so that it was very close to and almost
completely aligned with the agents' SUV. Agent Hall would have hit the door of the
Camry if he had tried to open his passenger-side door. Yvette then presented nine
rocks of crack cocaine to Agent Williams, who inspected them and placed them in the
cup holder in the front seat. From the front passenger seat of the SUV, meanwhile,
Agent Hall began to engage in conversation with Gaines, who was still sitting in the
passenger seat of appellant's Camry, and asked Gaines for an additional rock of crack
cocaine. Yvette then got out of the SUV, leaving the rear side door open behind her,
and returned to the Camry. Agent Hall was able to observe that Gaines handed "one
more rock" to Yvette. Yvette returned to the SUV, gave Agent Williams the
additional rock of cocaine, and then returned to the Camry, which appellant drove
away. 

 During this transaction, Dickinson Police Officer S. Turrubiate was monitoring
traffic while assisting the DEA agents with surveillance. Turrubiate heard a radio
transmission in which Agent Hall broadcasted a description of appellant's vehicle and
its license plate number. When Officer Turrubiate noticed appellant's green Camry,
he followed it to a house near the Coastal station, but did not stop to observe any
further action in order to avoid detection. 

 Also during this first transaction, Agent Hall asked Gaines how he could make
another purchase in the next 30 or 45 minutes. Agent Hall did not speak with
appellant, who was in the driver's seat, but "just talked by him" to Gaines. Gaines
gave his telephone number to Agent Hall and told him to call when ready. Within the
hour, Agent Hall dialed the number twice and indicated that he was ready to do
another drug deal. The person Agent Hall contacted identified himself as "Tommy"
and proposed that they meet at a specified house, but Agent Hall rejected that
proposal and made arrangements to meet at a Citgo gas station located a short
distance down the street from the Coastal gas station. 

 B. Cause No. 01-06-01055-CR

 At about 4 p.m., Agent Hall arrived at the Citgo gas station with a different
undercover DEA agent, J. Ramirez, who drove the SUV. Agent Hall was again the
passenger. Hall recalled that he telephoned Gaines again to state that he had arrived
at the designated location. After Agent Ramirez parked the vehicle at the station,
Gaines approached the agents' SUV on foot from behind the store area of the station. 
Gaines got into the agents' SUV and asked for money. When Agent Ramirez asked
to see the drugs first, Gaines removed the cocaine from his sock and gave it to Agent
Ramirez, who then gave Gaines $200. Gaines got out of the vehicle at that point, and
the agents drove away. 

 DEA Agent B. Birdwell, who conducted surveillance on the undercover
investigations relating to both transactions, watched as appellant and Gaines walked
from the Coastal gas station to the Citgo gas station and confirmed that the men
engaged in conversation as they walked. Agent Birdwell also testified that appellant
waited on the sidewalk in front of the Citgo station, and that while Gaines was in the
SUV with Agents Ramirez and Hall at the Citgo station, appellant walked up and
down on the sidewalk and appeared to be acting in a "counter-surveillance capacity"
by looking around to detect any police presence. According to another agent who
was conducting surveillance, Gaines and appellant joined up again after Gaines
completed the transaction at the Citgo station, and both men got into appellant's
green Toyota Camry. Forensic evidence established that each of the transactions
involved 2.5 grams of cocaine. 

Legal Sufficiency

In his sole point of error in cause number 01-06-01055-CR and his second
point of error in cause number 01-06-01056-CR, appellant contends that the evidence
is legally insufficient to support his convictions for delivery of a controlled substance
by constructive transfer, as charged in the indictments. 

A. Preliminary Considerations--Jury Charge & Law of Parties

Appellant's sufficiency challenges embody two underlying challenges relating
to the charges provided to the jury. (2) In the first of these, appellant contends that the
jury charges were incorrect and caused him egregious harm. (3) We need not address
this contention within appellant's legal sufficiency challenges, because we assume
a hypothetically correct jury charge in applying the legal-sufficiency standards. See 
Gharbi v. State, 131 S.W.3d 481, 483 (Tex. Crim. App. 2003); Malik v. State, 953
S.W.2d 234, 240 (Tex. Crim. App. 1977). 

In the second contention that serves as a premise for appellant's sufficiency
challenges, appellant argues that the jury charges improperly authorized conviction
under the law of the parties. (4) Appellant contends that, by including the law of the
parties in the jury charge, the trial court effectively permitted the State to "amend" the
indictment to allege an alternative means of committing the offense, specifically,
according to the law of parties in sections 7.01(a) and 7.02(a)(2) of the Penal Code,
Tex. Penal Code Ann. § 7.01(a) (Vernon 2003). See, e.g., Rodriguez v. State, 18
S.W.3d 228, 232 (Tex. Crim. App. 2000) (holding that indictment alleging
intoxication "by alcohol" precluded jury instruction authorizing conviction for
alternative theory of intoxication by alternate means of "alcohol, a drug, or a
combination"). Appellant's contention is misplaced.

In contrast to indictments in which the State specifies the manner and means
of committing an offense and must seek to amend the indictment to rely on alternative
means, see id., the Penal Code and well-settled law recognize that the State need not
specify, in the indictment, its intent to rely on the law of parties in seeking conviction. 
See Tex. Penal Code Ann. § 7.01(c) (Vernon 2003); Vodochodsky v. State, 158
S.W.3d 502, 509 (Tex. Crim. App. 2005); see also Powell v. State, 194 S.W.3d 503,
506 (Tex. Crim. App. 2006) ("[A] person can be convicted as a party even if the
indictment does not explicitly charge him as a party."); Marable v. State, 85 S.W.3d
287, 292 (Tex. Crim. App. 2002) (specifically rejecting contention that indictment did
not provide adequate notice for accused to prepare defense when indictment did not
allege State's intended reliance on law of parties to prove actual transfer); cf., Daniels
v. State, 754 S.W.2d 214, 218 (Tex. Crim. App. 1988) (stating, in context of law of
parties, that "evidentiary facts," not required for notice, need not be alleged in
indictment). Because appellant's contention that the jury charges improperly
authorized conviction under the law of the parties is thus without merit, his argument
does not affect our legal-sufficiency analysis. 

B. Standard of Review

In addressing a challenge to the legal sufficiency of the evidence, we review
the evidence in the light most favorable to the jury verdict to determine whether any
rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. Vodochodsky, 158 S.W.3d at 509 & n.5 (citing Jackson v. Virginia,
443 U.S. 307, 99 S. Ct. 2781 (1979)). The jury is the sole judge of the credibility of
witnesses and the weight, if any, to give their testimony under this standard, see
Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000), which applies
equally to direct and circumstantial evidence. See Powell, 194 S.W.3d at 506. Our
review must encompass the totality of circumstances, Vodochodsky, 158 S.W.3d at
509, but we may not reweigh the evidence and substitute our judgment for that of the
jury. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). When, as here, the
verdict results at least in part from the jury's considering circumstantial evidence, we
must view that evidence "in combination and its sum total"; furthermore, "[i]t is the
logical force of the circumstantial evidence," rather than any number of "links, that
supports a jury's verdict." See Evans v. State, 202 S.W.3d 158, 164, 166 (Tex. Crim.
App. 2006) (explaining that court of appeals analyzed "facts or links in isolation"
rather than in combination and sum total, and thereby misapplied standard of review
in addressing legal-sufficiency challenge to conviction for possession of cocaine). 

As noted above, we measure the legal sufficiency of the evidence as applied
to a hypothetically correct jury charge, which should accurately state the law, be
authorized by the indictment, adequately describe the offense tried, and not increase
the State's burden of proof unnecessarily. Malik, 953 S.W.2d at 240; see
Vodochodsky, 158 S.W.3d at 509. 

C. Hypothetically Correct Jury Charge

The indictments in this case alleged that appellant constructively transferred
the controlled substance, cocaine, to the DEA agents named in the indictments. 
Having alleged a constructive transfer, the State had to prove a constructive transfer.
Davila v. State, 664 S.W.2d 722, 724 (Tex. Crim. App. 1984). To conform to the
indictment, therefore, a hypothetically correct charge would require the State to
prove, beyond a reasonable doubt, either that appellant delivered the cocaine himself
by constructive transfer, or, because the State also relied on section 7.02(a)(2) of the
Penal Code, that appellant was criminally responsible as a party to another's delivery
of the cocaine by constructive transfer, specifically, by acting with intent to promote
or assist the commission of the offense, appellant solicited, encouraged, directed,
aided, or attempted to aid the other person to commit the offense. See Tex. Penal
Code Ann. §§ 7.01(a), 7.02(a)(2); Vodochodsky, 158 S.W.3d at 509 (citing same);
cf., Davila, 664 S.W.2d at 724 (noting that defendant had not been charged as party).

In the following sections we address the requirements of a hypothetically
correct charge as to (1) the offense of constructive transfer and (2) the law of parties
under sections 7.01(a) and 7.02(a)(2) of the Penal Code, as applied to the offense of
constructive transfer.

 1. Constructive Transfer in General--Daniels Elements 

To prove the offense of delivery of a controlled substance, the State must prove
that the defendant knowingly delivered a controlled substance. Tex. Health &
Safety Code Ann. § 481.112(a) (Vernon 2003). The jury charge used the term
"knowingly" and stated that a person "acts knowingly, or with knowledge, with
respect to the nature of his conduct or to circumstances surrounding his conduct[,]
when he is aware of the nature of his conduct or that the circumstances exist." The
Health and Safety Code defines "delivery" as a "transfer, whether actua[l] or
constructiv[e], to another a controlled substance . . . regardless of whether there is an
agency relationship." Tex. Health & Safety Code Ann. § 481.002(8) (Vernon
Supp. 2007). The jury charge included this definition. "Transfer" has been described
as "a voluntary relinquishment of possession in favor of another." Thomas v. State,
832 S.W.2d 47, 51 (Tex. Crim. App. 1992). 

The Health and Safety Code does not define "constructive transfer." See Sims
v. State, 117 S.W.3d 267, 273-74 (Tex. Crim. App. 2003) (citing Daniels, 754
S.W.2d at 219-21, for having considered several definitions from dictionaries and
civil cases without adopting a specific definition). There is thus no "specialized
'criminal' meaning of the term." Id., 117 S.W.3d at 275. 

When, as here, the State alleges constructive transfer of a controlled substance
to a recipient, the State must prove both that the defendant (1) had either direct or
indirect control of the transferred substance before delivery, and (2) knew that it
would be delivered to a transferee. Sims, 117 S.W.3d at 277 (summarizing elements
of Daniels, 754 S.W.2d at 221); Swinney v. State, 828 S.W.2d 254, 257 (Tex.
App.--Houston [1st Dist.] 1992, no pet.) (applying Daniels elements). An
intermediary is "not required" for constructive transfer, but the defendant "must have
contemplated that there would in fact be a third party transferee" and that
"constructive transfer could occur" when defendant directs transferee to retrieve
contraband from a specified place. Sims, 117 S.W.3d at 277; Jackson v. State, 84
S.W.3d 742, 745 n.4 (Tex. App.--Houston [1st Dist.] 2002, no pet.) (noting that
Daniels does not require proof that initial transferor know that specific individual was
ultimate transferee, but does require that transferor know that initial transferee is not
ultimate transferee) (citing Daniels, 754 S.W.2d at 221). (5)

When the State alleges that the defendant constructively transferred a
controlled substance, but does not prove either one or both of the Daniels elements,
the State has failed "a necessary precondition" to establish a transfer. See Sims, 117
S.W.3d at 271 (interpreting defendant's "direct or indirect control" element of
Daniels and Rasmussen v. State, 608 S.W.2d 205, 210 (Tex. Crim. App. [Panel Op.]
1980) (op. on State's mot. for rehearing)). (6) 

As Sims expressly qualified, however, this rule applies "absent the law of
parties" and, therefore, only when the State charges a defendant as a primary actor
and does not rely on the law of parties. See Sims, 117 S.W.3d at 271 (emphasis
added). When, as here, the State relies on the law of parties to convict the accused
of a constructive transfer, failure of proof, as to the accused, of the two requisite
elements of constructive transfer confirmed in Sims will not invalidate the verdict on
legal sufficiency grounds unless the State also fails to meets its burden of proof
regarding the law of parties. See id., 117 S.W.3d at 277; Vodochodsky, 158 S.W.3d
at 509-10. 

2. Law of Parties--Penal Code Sections 7.01(a) and 7.02(a)(2)

In addition to authorizing the jury to assess criminal responsibility against
appellant as charged in the indictment, by finding him guilty as the primary actor for
conduct that constituted the offense constructive transfer, in accordance with the two
requisite Daniels elements confirmed by Sims, 117 S.W.3d at 269, the hypothetically
correct jury charge would, in addition, authorize the jury to assess criminal
responsibility against appellant under the law of parties. Specifically, the
hypothetically correct charge would also authorize finding appellant guilty for
conduct by others that constituted constructive transfer, in accordance with criminal
responsibility under Penal Code section 7.02(a)(2). As confirmed by Vodochodsky,
158 S.W.3d at 509, the hypothetically correct charge would authorize finding
appellant guilty as a party through proof that appellant acted, with intent to promote
or assist the commission of the offense, by soliciting, encouraging, directing, aiding,
or attempting to aid the primary actor to commit the constructive transfer. See id;
Tex. Penal Code Ann. §§ 7.01(a), 7.02(a)(2). See Richardson v. State, 879 S.W.2d
874, 882 (Tex. Crim. App. 1993) (citing Forbes v. State, 513 S.W.2d 72, 79 (Tex.
Crim. App. 1974)); Beier v. State, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985);
Christensen v. State, 240 S.W.3d 25, 31 (Tex. App.--Houston [1 Dist.] 2007, pet.
ref'd) (op. on rehearing). 

Evidence that a person is a party to an offense may be entirely circumstantial,
but the evidence must show that the parties were acting together to accomplish their
common purpose. See Powell, 194 S.W.3d at 506; Christensen, 240 S.W.3d at 31. 
Any agreement to accomplish a common purpose must have been made before or
contemporaneously with the criminal event, but in determining participation in an
offense, the court may examine events that occurred before, during, and after the
offense was committed. Powell, 194 S.W.3d at 507; Christensen, 240 S.W.3d at
31-32. 

D. Discussion--Cause No. 01-06-01056-CR

Regarding appellant's second point of error in cause 01-06-01056-CR, which
involves the first transaction at the Coastal gas station, the evidence is legally
sufficient for a rational trier of fact to find (1) that the primary actor, Gaines,
delivered the 2.5 grams of cocaine involved in that transaction to Agent Williams by
constructive transfer, and (2) that appellant was criminally responsible under section
7.02(a)(2) as a party to that constructive transfer. 

1. Gaines as Primary Actor for Constructive Transfer

The conduct by Gaines in this case is similar to the conduct this Court referred
to in Swinney in holding that legally sufficient evidence established a constructive
delivery. Swinney, 828 S.W.2d at 256-58. In Swinney, an undercover police officer
drove his car past Swinney and three other individuals, who were standing on the side
of the road and making head and hand gestures towards him that the officer
recognized, from his experience, as an offer to sell drugs. Id. at 256. At Swinney's
direction, the officer pulled his car up to the individuals, and Swinney asked the
officer what he needed. Id. When the officer replied that he needed a twenty-dollar
rock, Swinney returned to the other individuals and spoke with them, and Swinney and
a juvenile walked to the officer's car. Id. The juvenile entered the officer's car on the
passenger side while Swinney stood immediately outside the car. Id. When the
juvenile asked the officer how many he needed, the officer responded that he needed
just one, took a single rock from the juvenile's hand, and then purchased it from the
juvenile. Id. This Court held the evidence legally sufficient to prove that Swinney
exercised indirect control over the drugs and that the juvenile acted under his direction
and rejected Swinney's challenge to that element of constructive transfer. Id. at
257-58.

Like the juvenile in Swinney, Yvette made the actual transfer of the crack
cocaine in this case, but only after Gaines had given the cocaine to her. When Walker
and appellant left the scene "to get the drugs," appellant returned with Gaines. Gaines
remained in the appellant's Camry while the actual transfer of the cocaine by Yvette
to Agent Williams occurred, just as Swinney remained standing outside the officer's
vehicle while the juvenile made the transfer. The circumstances here also show that
Yvette conferred with Gaines in appellant's Camry and obtained the substances from
Gaines for each transaction. After Yvette handed over the nine rocks of crack cocaine,
Agent Hall requested an additional rock. Yvette left the agents' SUV and returned to
the Camry, where Gaines gave her the additional rock, whereupon Yvette returned to
the agents' SUV, where she executed the second sale of the final rock. 

Viewed in accordance with the legal-sufficiency standard of review, a rational
jury could find, beyond a reasonable doubt, from the evidence that (1) Gaines and
Yvette planned the transaction, (2) Gaines exercised control over the drugs and
voluntarily relinquished them to Yvette, (3) Yvette acted at Gaines's direction when
delivering the drugs, and (4) Gaines knew that Agent Williams, and not Yvette, was
the final transferee. See Sims, 117 S.W.3d at 277; Daniels, 754 S.W.2d at 221-22;
Swinney, 828 S.W.2d at 257-58. As in Swinney, therefore, the evidence is legally
sufficient to establish that Gaines, as primary actor, delivered the narcotics to the
undercover agent by constructive transfer, as alleged in the indictment.

2. Appellant as Party to Constructive Transfer by Gaines

Having concluded that Gaines was a primary actor in this constructive transfer,
we next assess the legal sufficiency of the evidence to establish that appellant was a
party to Gaines's constructive transfer of cocaine to Agent Williams under the law of
parties of section 7.02(a)(2) of the Penal Code, as construed by this Court in
Christensen, 240 S.W.3d at 31-32, by acting with intent to promote or assist the
commission of the offense, appellant solicited, encouraged, directed, aided, or
attempted to aid Gaines in committing the offense. See Tex. Penal Code Ann. §§
7.01(a), 7.02(a)(2); Vodochodsky, 158 S.W.3d at 509 (citing same). 

The circumstances of this case resemble those in Donley v. State, in which the
defendant was convicted, as here, as a party to delivery of a controlled substance by
constructive transfer, in accordance with section 7.02(a)(2) of the Penal Code. 140
S.W.3d 428, 429 (Tex. App.--Beaumont 2004, no pet.) (per curiam). In Donley, an
undercover officer and an informant visited a trailer residence shared by three
individuals, the defendant, a man named Taylor, and another resident. Id. at 429. The
informant negotiated with Taylor for the purchase of methamphetamines out of the
presence of the defendant and the undercover officer. Id. Taylor instructed the
informant and the officer to go to the informant's home to complete the transaction. 
Id. at 429-30. The defendant drove Taylor and the other resident to the home of the
informant, where the defendant observed the officer place money on the coffee table
while Taylor and the informant spoke in a back room. Id. at 430. Taylor entered the
room, picked up the money, and dropped a bag of narcotics on the table. Id. The
Beaumont Court of Appeals held that the evidence was legally sufficient to establish
that the defendant aided and assisted Taylor's delivery by constructive transfer. Id.

 In this case, as in Donley, appellant neither negotiated the sale nor physically
transferred the drugs to any person. Yet, appellant transported Gaines, as to whom we
have held that the evidence is legally sufficient to establish the offense of constructive
transfer to Agent Williams, as primary actor. Appellant transported Gaines to the
Coastal gas station, in aid of the transaction, just as the defendant in Donley drove
Taylor to the location of the transaction, and appellant also left the scene of the
offense with Gaines. Like the defendant in Donley, appellant watched the transfers
of the narcotics close at hand, inside his Camry. 

 Regarding appellant's contention that no evidence shows that he was aware of
the existence of the drugs until Gaines gave Yvette the extra rock, there is ample
evidence of circumstances that occurred before, during, and after the offense, from
which a rational jury could have found, beyond a reasonable doubt, that Gaines and
appellant had a common understanding and design to engage in the offense of
constructive transfer. See Hubbard v. State, 896 S.W.2d 359, 362 (Tex.
App.--Houston [1st Dist.] 1995, no pet.). 

 Specifically, the circumstances of this case show that Yvette conversed or
interacted with both appellant and another person at least three times during
commission of the offense. In the first of these, Yvette spoke with appellant and
Walker before they left together in appellant's Camry. After that conversation, Yvette
told the agents that "they," referring to appellant and Walker, who had just left the
Coastal station in appellant's Camry, were "going to get the drugs." (7) When appellant
returned to the Coastal station, he was transporting Gaines, who had not been at the
scene before and who ultimately provided the cocaine that Yvette transferred to the
DEA agents. On appellant's arrival at the Coastal station with Gaines as his
passenger, Yvette approached the Camry and spoke with both appellant and Gaines,
whereupon appellant drove away, still with Gaines as passenger. This was appellant's
and Gaines's second conversation with Yvette. When appellant returned to the
Coastal station, still with Gaines as passenger, appellant parked his Camry alongside,
but still to the rear of the agents' SUV. Yvette entered the Camry through rear door
behind appellant and again spoke with both appellant and Gaines. But when Yvette
left the Camry and walked toward its rear and around to the rear passenger side of the
agents' SUV, appellant pulled the Camry up so that it was much closer to the agents'
SUV and almost parallel to it. The new position effectively prevented Officer Hall
from opening the door of the SUV without hitting appellant's Camry. After Yvette
entered the agents' SUV, she presented the first transfer of cocaine to Agent Williams.
After completing the first transfer, Yvette returned to appellant's Camry, and left the
scene with appellant and Gaines.

 The logical impact of these interactions among Yvette, appellant, and first
Walker and then Gaines, show more than "mere presence" on appellant's part. The
evidence demonstrates that the narcotics were not at the Coastal station, had to be
brought there, and were delivered there in appellant's Camry, with appellant driving. 
During transit to the Coastal station, appellant drove into its parking lot and parked
the Camry very closely to the agents' SUV, but when Yvette left the Camry with the
first transfer of cocaine, appellant pulled up much more closely to the agents' SUV,
so closely, in fact that the cars were aligned and the right passenger doors of the
agents' SUV were blocked. In addition, Yvette received the nine rocks of cocaine in
appellant's Camry and then received an additional rock of cocaine in appellant's
Camry, in the presence of both appellant and Gaines. After or during Yvette's
transfers to Agent Williams, Agent Hall spoke "across" appellant to discuss with
Gaines, who was in the front passenger seat of the Camry beside appellant, how Hall
could purchase more cocaine later that day. Finally, Yvette and Gaines drove away
in appellant's Camry after completing the transaction. 

 A rational trier of fact could have found, from the sum total of this
circumstantial evidence, on which the State may properly rely, see Powell, 194 S.W.3d
at 506-07, including especially the proximity of the individuals involved in the
transaction, that appellant acted, with knowledge, gained before or during Gaines's
constructive transfer via Yvette, see id. at 507, that narcotics were being transferred,
and that appellant knowingly agreed to accomplish the common goal of transferring
the narcotics to Agent Williams. See id.; Christensen, 240 S.W.3d at 31-32. The jury
could also have rationally found, based on these circumstances, that appellant acted
with intent to promote or assist the commission of the offense of constructive delivery
by Gaines by aiding or attempting to aid Gaines in committing that offense. See Tex.
Penal Code Ann. §§ 7.01(a), 7.02(a)(2); Vodochodsky, 158 S.W.3d at 509 (citing
same). 

 We hold, therefore, that the evidence is legally sufficient to establish that, by
transporting Gaines, appellant knowingly and intentionally aided and assisted Gaines
to commit delivery of the narcotics, by constructive transfer, to Agent Williams, as
charged in the indictment. 

 We overrule appellant's second point of error in cause number 01-06-01056-CR.

E. Discussion--Cause No. 01-06-01055-CR

Appellant's sole point of error in Cause No. 01-06-01055-CR challenges the
legal sufficiency of the evidence to support appellant's conviction regarding the
second transaction at the Citgo gas station. As we have explained, a hypothetically
correct charge in the present case would authorize the jury to assess criminal
responsibility against appellant, as charged in the indictment, by finding him guilty
either (1) as primary actor for conduct that constitutes constructive transfer, in this
instance to Agent Ramirez, in accordance with the two requisite elements confirmed
by Sims, 117 S.W.3d at 269, or (2) for conduct by others that constitutes constructive
transfer, in accordance with criminal responsibility under section 7.02(a)(2), as
confirmed by Vodochodsky, 158 S.W.3d at 509, by acting, with intent to promote or
assist the commission of the offense, to solicit, encourage, direct, aid, or attempt to aid
the other person to commit the constructive transfer to Agent Ramirez. 

We conclude that the evidence is legally insufficient to support appellant's
conviction for delivery of a controlled substance, by constructive transfer, to Agent
Ramirez. The indictment charges appellant with constructive transfer, which became
the State's burden to prove beyond a reasonable doubt. See Daniels, 754 S.W.2d at
221-22; Davila, 664 S.W.2d at 724. As the analysis that follows demonstrates, a
rational trier of fact could not reasonably have found beyond a reasonable doubt from
the evidence in this case that appellant was a party to constructive transfer of the
cocaine by another or that appellant acted as the primary actor in a constructive
transfer of cocaine to Agent Ramirez. 

1. No Constructive Transfer by Gaines In contrast to the first transaction at the Coastal station, a rational jury could not
have found beyond a reasonable doubt that appellant was a party to a constructive
transfer to Agent Ramirez, because the record establishes that an actual transfer, rather
than a constructive transfer, occurred. 

 As addressed above, a constructive transfer occurs when the defendant (1) had
either direct or indirect control of the transferred substance, and (2) knew that the
substance would be delivered to a transferee. See Sims, 117 S.W.3d at 277
(summarizing Daniels elements, 754 S.W.2d at 221-22). Constructive transfer thus
contemplates a "type of transfer that does not vest actual possession in the transferee." 
Sims, 117 S.W.3d at 274; see Daniels, 754 S.W.2d at 221-22. 

 Actual transfer, on the other hand, consists of "giving real possession" to the
transferee," his agents, or others legally identified with the transferee. See Sims, 117
S.W.3d at 273; Hubbard, 896 S.W.2d at 361; see also Jackson, 84 S.W.3d at 744 ("An
'actual transfer' of a controlled substance occurs when a defendant transfers actual
possession and control [of the substance] to another person.") (citing Thomas, 832
S.W.2d at 51). The essence of actual transfer is that it vests immediate possession in
the recipient. See Sims, 117 S.W.3d at 273 ("[Actual transfer] is a formal immediate
[transfer] of the property to the vendee.") (citing Daniels, 754 S.W.2d at 220). (8) 

 It is undisputed that appellant and Gaines were the only individuals at the Citgo
station, except DEA agents Hall and Ramirez and that Gaines made the only transfer
at the Citgo gas station. Gaines entered Agent Ramirez's vehicle, removed the cocaine
from his sock, and handed the cocaine to Agent Ramirez, who handed $200 to Gaines. 
Gaines's conduct constituted an "actual transfer" because he manually transferred the
controlled substance to Agent Ramirez. See id.; Jackson, 84 S.W.3d at 744; Hubbard,
896 S.W.2d at 362. In contrast to the constructive transfer accomplished at the
Coastal station, Gaines did not entrust the narcotics to an intermediary like Yvette. 
Likewise, Gaines did not place the cocaine in a location and tell Agent Ramirez where
to retrieve it. See Sims, 117 S.W.3d at 278. Gaines's conduct was not the "type of
transfer that does not vest actual possession in the transferee." See id., 117 S.W.3d at
274 (emphasis in original). To the contrary, Gaines's transfer vested immediate
possession of the $200 worth of cocaine to Agent Ramirez and was, therefore, not a
constructive transfer. See id.

 2. Therefore, No Constructive Transfer by Appellant as Party

 Because there is no evidence that Gaines constructively transferred the cocaine
to Agent Ramirez, there is necessarily no evidence that appellant was criminally
responsible as a party to a constructive transfer by Gaines, in accordance with section
7.02(a)(2) of the Penal Code, as confirmed by Vodochodsky, 158 S.W.3d at 509, by
acting, with intent to promote or assist the commission of a constructive transfer, to
solicit, encourage, direct, aid, or attempt to aid Gaines to commit a constructive
transfer of cocaine to Agent Ramirez, as charged in the indictment. 

 3. Appellant Was Not Primary Actor

Because the jury charge authorized the jury to find appellant guilty as either a
primary actor or as a party, we next address whether any rational trier of fact could
have found that appellant, as the primary actor, constructively transferred the cocaine
to Agent Ramirez. To be legally sufficient under the Daniels elements, the evidence
had to show (1) that appellant had either direct or indirect control over the cocaine
delivered to Ramirez and (2) knew that the cocaine would be delivered to someone
else, in this case, Ramirez. See Sims, 117 S.W.3d at 277; Daniels, 754 S.W.2d at
221-22; Swinney, 828 S.W.2d at 257. 

 Considering the first element, there is no evidence in the record before us from
which the jury could have found that appellant had direct or indirect control over the
cocaine that Gaines removed from his sock and transferred to Agent Ramirez. 

 The facts relevant to the transaction at the Citgo station here are similar to the
facts in Dawson v. State, in which officers approached Dawson and asked where they
could get a twenty-dollar "rock" of cocaine. 812 S.W.2d 635, 636 (Tex.
App.--Houston [14th Dist.] 1991, pet. ref'd). Dawson led the officers to a tin shack
where an individual named Jenkins sat inside. Id. The officers and Dawson entered
the shack, and the officers purchased cocaine from Jenkins. Id. A short time later,
other officers arrived and arrested everyone inside the shack. Id. Our sister court held
that no evidence showed that Dawson had exercised any control over the drugs. Id. at
637. 

 Like Dawson, appellant did not act in a manner that suggested that he had
control over the cocaine that Gaines produced from his sock and handed to Agent
Ramirez. Though appellant was present so as to hear the initial arrangements made at
the Coastal for a second transaction and was nearby during this second transaction, the
record does not show that anyone approached appellant about purchasing drugs or that
anyone acted in a manner indicating that the cocaine Gaines removed from his sock
before tendering it to Agent Ramirez belonged to appellant or was under his direct or
indirect control. 

 Testimony and videotape evidence show that appellant transported Gaines twice
during the first transaction at the Coastal station, walked with Gaines toward the Citgo
station, and spoke with Gaines as they walked. A separate videotape confirmed that
appellant was later seen outside the Citgo station, where the officers opined that he
appeared to be acting as the "lookout" during the transaction with Agent Ramirez. 
After that transaction, appellant rejoined Gaines. 

 But nothing in these circumstances suggests that appellant had direct or indirect
control over the cocaine. Though an officer stated that appellant spoke with Gaines as
they walked to the Citgo station, the record contains no audiotapes, and no evidence
discloses the substance of any conversations between appellant and Gaines. Likewise,
the videotape in which appellant appears outside the Citgo station does not show any
interaction between appellant and Gaines. The videotape shows only that appellant
walked back and forth in front of the station and thus does not show that appellant had
direct or indirect control over the drugs that Gaines eventually removed from his sock
while he was in Agent Hall's SUV for transfer to Agent Ramirez. And nothing in the
record shows that anyone saw the rocks of cocaine before Gaines removed them from
his sock after entering Hall's SUV. Though the officers' testimony attributing
"lookout" duty to appellant tends to support the verdict, the evidence nonetheless fails
to show that appellant had direct or indirect control over the cocaine that Gaines
delivered to Ramirez. 

 In Swinney, this Court held that the evidence was legally sufficient to establish
that Swinney exercised indirect control over the narcotics, and that the juvenile acted
under Swinney's direction to transfer them to the undercover officer. Swinney, 828
S.W.2d at 258. Swinney, however, had initiated contact with the officer when he
gestured for the officer to pull over. Id., 828 S.W.2d at 256. Swinney asked the officer
what he wanted, and Swinney spoke with the juvenile. Id. No evidence shows that
appellant ever spoke with any of the agents, and no witness was able to testify about
any specific words that appellant uttered. In Swinney, moreover, the juvenile entered
the officer's vehicle to complete the transaction, while Swinney stood just inside the
angle created by the open passenger door. Id. Though appellant was present at the
Citgo station, the circumstances here do not suggest a position comparable to
Swinney's proximity to the officer's car door, from which we may infer that appellant
exercised direct or indirect control over the cocaine transferred to Agent Ramirez. See
id. In Davila, an undercover officer and an informant entered a house and spoke
with Davila, who asked what they wanted and went outside to speak with her husband,
who eventually provided drugs to the officer. Davila, 664 S.W.2d at 723. After
summoning her husband, Davila returned inside the house and sat on a couch. Id. 
Shortly thereafter, Davila's husband entered the residence and asked, "How many do
you want?" and then the officer repeated his request. Id. Davila's husband handed
over the drugs in exchange for money. Id. at 723-24. In affirming the appellate court's
holding that the evidence was legally insufficient to establish that Davila constructively
transferred the narcotics, id. at 724-25, the Court of Criminal Appeals stated that the
evidence showed, at most, that Davila merely relayed the officer's offer to buy to her
husband. Id. at 724.

In this case, the evidence does not show that appellant negotiated with the
undercover agents, handled the narcotics, or directed anyone else to transfer the
narcotics. The jury could reasonably have found in this case that appellant relayed
Agent's Hall's request to purchase drugs to Gaines after Yvette and Walker spoke with
appellant at Coastal gas station. The jury could also reasonably have found that
appellant was aware, because Gaines was in appellant's Camry when Gaines and Agent
Hall made arrangements for the second transaction, that Gaines might sell drugs at the
Citgo gas station. Like the defendants in Davila and Dawson, however, appellant's
knowledge of a possible drug transaction is not legally sufficient evidence to show that
appellant controlled the cocaine or directed another to transfer the cocaine, as required
to establish constructive transfer. See Sims, 117 S.W.3d at 269; Daniels, 754 S.W.2d
at 221-22; Swinney, 828 S.W.2d at 257. 

Having reviewed all the evidence presented at trial in the requisite light, we hold
that a rational trier of fact could not have found beyond a reasonable doubt, from that
evidence and a theoretically correct charge, that appellant constructively transferred
cocaine to Agent Ramirez, either as the primary actor or as a party. 

Accordingly, we sustain appellant's sole point of error in Cause No. 01-06-01055-CR.

Cause No. 01-06-01056-CR


Jury Charge Error--Conviction not Authorized by Indictment? 


In his first point of error in cause number 01-06-01056-CR, which arises from
the transfer of cocaine to Agent Williams, appellant contends that he sustained
egregious harm from the trial court's erroneous charge to the jury because, though the
indictment alleged delivery "by constructive transfer," the jury charge authorized
conviction if the jury found that appellant was a party to the delivery of the cocaine by
"direct" transfer and thus on a theory not alleged in the indictment. Appellant concedes
there was no objection to the charge.

A. Standard of Review

When, as here, there was no timely objection to the jury charge at trial, we will
reverse only if appellant establishes error that resulted in egregious harm. Abdnor v.
State, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994); Almanza v. State, 686 S.W.2d
157, 171 (Tex. Crim. App. 1984). We undertake a two-step analysis in reviewing
claimed error in the jury charge, first by determining whether error actually exists in
the charge and then, if there is error, we determine, by applying the Almanza harm
analysis, whether sufficiently egregious harm resulted from the error to require
reversal. See Olivas v. State, 202 S.W.3d 137, 143-44 (Tex. Crim. App. 2006);
Almanza, 686 S.W.2d at 171 (stating that Tex. Code Crim. Proc. Ann. art. 36.19
(Vernon 2006) states standard for both fundamental error, resulting from egregious
harm, and ordinary reversible error). 

B. Charge Authorized Conviction for "Delivery" as a Party

A jury may not convict on a theory not specifically alleged in the indictment. 
E.g., Rodriguez, 18 S.W.3d at 232; Daniels, 754 S.W.2d at 222. The jury in this case
found appellant "guilty of the offense of Delivery of a Controlled Substance, to wit: 
Cocaine as alleged in the indictment." The pertinent portion of the indictment in this
case, however, was more specific and charged that appellant "knowingly deliver[ed]"
cocaine to Williams "by constructive transfer." 

In the definitions portion of the charge, the trial court defined "delivery" as the
"means to transfer, actually or constructively, to another a controlled substance . . . . 
The term includes offering to sell a controlled substance." The charge defines "deliver
constructively" as meaning "a transfer of a controlled substance either belonging to
an individual or under his control by some other person or agency at the instance and
direction of the individual accused" and also states that a person "acts knowingly, or
with knowledge, with respect to the nature of his conduct or to circumstances
surrounding his conduct when he is aware of the nature of his conduct or that the
circumstances exist." 

The trial court's last definition pertains to the law of parties and states, "All
persons are parties to an offense who are guilty of acting together in the commission
of the offense. A person is criminally responsible as a party to an offense if the
offense is committed by his own conduct, by the conduct of another for which he is
criminally responsible, or both." In addition, the trial court tracked section 7.02(a)(2
of the Penal Code by stating, "A person is criminally responsible for an offense
committed by the conduct of another if, acting with intent to promote or assist the
commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the
other person to commit the offense."

In the application paragraph that follows, the trial court charged the jury: 

Now, if you find from the evidence beyond a reasonable doubt that
in Galveston County, Texas, on or about the 10th day of June, A.D. 2004,
the Defendant, KENNETH DEWAYNE HAYES, did then and there
knowingly deliver by constructive transfer, to E[.] Williams, a controlled
substance, namely, cocaine, in an amount of one gram or more but less
than four grams, or then and there act with the intent to promote or assist
YVETTE JACKSON or DEMETRIUS GAINES by encouraging,
directing, aiding, or attempting to aid either YVETTE JACKSON or
DEMETRIUS GAINES in the delivery of a controlled substance, to-wit:
cocaine, in an amount of one gram or more but less than four grams, then
you will find the Defendant guilty as charged in the indictment.


(Emphasis added.)

 The first portion of this application paragraph plainly instructs the jury to
convict appellant if he himself delivered the cocaine to Agent Williams "by
constructive transfer," as charged in the indictment. But the second portion of the
paragraph, which applies the law of parties and tracks section 7.02(a)(2) of the Penal
Code, does not track the indictment and instead authorizes the jury to find appellant
guilty as a party "in the delivery" by either Yvette or Gaines. 

 Appellant contends that using the words "in the delivery" in the second
paragraph instead of "in the constructive transfer" was error and that it resulted in
egregious harm because "delivery," under the charge given, encompasses both actual
and constructive delivery. 

 According to appellant, the charge in this case is indistinguishable from the
charge in Daniels, in which the defendant was found guilty of delivery of marihuana
by constructive delivery, and the Court of Criminal Appeals ruled that error in the
charge was fundamental. Daniels, 754 S.W.2d at 223. As in this case, the application
paragraph of the Daniels charge authorized the jury to find Daniels guilty either "by
his own conduct" or pursuant to the law of parties, by aiding commission of the
offense. Id. at 222. But the application paragraph in this case differs significantly
from that in Daniels, which stated, 

 Now, if you believe from the evidence beyond a reasonable doubt that
the Defendant, James E. Daniels, either by his own conduct knowingly
and intentionally delivered more than one fourth ounce of marijuana to
Kimberly Hughes on October 12, 1992 in Burnet County or acting with
intent to promote or assist the commission of the offense aided James E.
Whited to commit the offense charged as defined above, and that the
said James E. Whited did on October 12, 1982 deliver more than one
fourth ounce of marijuana to Kimberly Hughes in Burnet County, Texas,
you will find the Defendant guilty." 


Id. (Emphasis added.) 

 The Daniels charge defined "deliver" as meaning "the actual or constructive
transfer from one person to another of marijuana, whether or not there is an agency
relationship." Id. (Emphasis in original.) The dispositive issue in Daniels was that
the charge resulted in egregious harm to Daniels because, by referring to "the
offense" merely as "delivery" and defining "delivery" as either "constructive or
actual" transfer, the charge impermissibly authorized a finding of guilt for actual
transfer when the indictment alleged only constructive transfer. See id. Appellant
contends that the jury charge in his case resulted in the same error and likewise
authorized a finding of guilt for actual, or "direct" transfer, by the parties portion of
the application paragraph. We do not agree. 

 Much like the Daniels charge, see id., the charge in this case defines "deliver"
in alternative terms, specifically, as "to transfer, actually or constructively" (emphasis
added). But this definition is the only place in the charge that refers to the offense of
"actual" transfer; there is no reference at all to the terms "direct transfer" or "direct
delivery." In contrast to the Daniels charge, the charge in this case defines only
"deliver constructively"; the charge does not define "actual transfer" as an offense
and does not define "deliver actually" (emphasis added). 

 More importantly, the application paragraph contains only the terms
"constructive transfer," in the portion pertaining to appellant as primary actor, and
"the delivery," in the portion pertaining to appellant as a party. The application
paragraph does not contain the terms "actual transfer." Thus, though the Daniels
charge clearly authorized a finding of guilt for actual delivery as an alternative to the
constructive delivery alleged in the indictment, see id., the charge in this case did not. 
 Rather, the portion of the application paragraph that applied the law of parties
of section 7.02(a)(2) of the Penal Code authorized the jury to find appellant guilty for
an unspecified "delivery," without qualification, in contrast to the primary-actor
portion of the application paragraph, which properly tracks the allegations by
referring to the offense as "deliver[y] by constructive transfer." 

 The portion of the application paragraph that applied the law of parties of
section 7.02(a)(2) referred to the offense as "delivery," without any additional
description, rather than delivery "by constructive transfer," as alleged in the
indictment. Because the definitions that described "delivery" referred to both actual
and constructive delivery, the application paragraph authorized the jury to convict
appellant as a party to an actual delivery and thus an offense for which appellant was
never charged. Accordingly, we conclude that the jury charge contains an error and
must proceed to assess whether the error resulted in egregious harm to appellant 

C. Error Analysis by Almanza Factors 

 Unobjected-to error in a criminal jury charge will result in reversal only "if the
error is so egregious and created such harm that [appellant] 'has not had a fair and
impartial trial'--in short 'egregious harm.'" Almanza, 686 S.W.2d 157 at 171. To
conduct an egregious-harm analysis, we consider (1) the entire jury charge, (2) the
state of the evidence, including the contested issues and weight of probative evidence,
(3) the argument of counsel and (4) any other relevant information revealed by the
record of the trial as a whole. Id. We apply these factors to determine whether the
portion of the application paragraph that applied the law of parties of section
7.02(a)(2) of the Penal Code resulted in egregious harm to appellant by authorizing
a finding of guilty as charged by the indictment, for a mere "delivery," when the
indictment alleged delivery by constructive transfer. 

 1. The Entire Jury Charge

The jury charge begins with a paragraph stating that appellant "stands charged
by indictment with the offense of Delivery of a Controlled Substance." This
paragraph thus omits that appellant was indicted for delivery by constructive transfer. 
In addition, the charge concludes by instructing the jury, "Your sole duty at this time
is to determine the guilt or innocence of [appellant] under the indictment in this case." 

The first portion of the application paragraph, however, clearly requires proof
that appellant constructively transferred the cocaine, and the charge defined
constructive delivery in terms that appellant does not contend are erroneous. Though
the portion of the application paragraph that applies the law of the parties refers only
to the "delivery," this portion of the charge does not refer to either an actual delivery
or an actual transfer. Likewise, though the charge defines "delivery" in terms of
either constructive or actual transfer, the charge does not define "actual delivery" or
"actual transfer" and the word "actual" appears nowhere else in the charge. 

We note further that the charge cautioned the jury twice that it could not find
appellant guilty based solely on his presence at the scene of the offense. In defining
the law of parties, the charge tracks the requirements of section 7.02(b) of the Penal
Code by stating that "a person is criminally responsible for an offense committed by
the conduct of another if, acting with intent to promote or assist the commission of
the offense, he solicits, encourages, directs, aids, or attempts to aid the other person
to commit the offense." But the charge proceeds beyond the requirements of section
7.02(a)(2) by cautioning the jury that "Mere presence alone will not constitute one a
party to an offense." 

In addition the charge contains a second "beyond a reasonable doubt"
paragraph that repeats, "As stated before, mere presence of [appellant] at the scene
of the commission of the offense would not constitute him a party to the offense
charged," and then states, 

 [I]f you should find from the evidence beyond a reasonable
doubt that YVETTE JACKSON or DEMETRIUS GAINES
did commit the offense of delivery of a controlled
substance . . . and that [appellant] was present, but you
further find from the evidence, or have a reasonable doubt
thereof, that [appellant] did not act with intent to promote
or assist the commission of the delivery of a controlled
substance . . . by encouraging, soliciting, directing or
aiding or attempting to aid YVETTE JACKSON or
DEMETRIUS GAINES in the commission of said offense,
if any, then you will find [appellant] not guilty." 


(Emphasis added.) 


This paragraph also refers to "delivery" without explaining that any delivery
must be made by constructive transfer. But, like the portion of the application
paragraph that applies the law of parties, this paragraph does not refer to an "actual"
or "direct" delivery and the charge nowhere else refers to actual delivery and does not
refer at all to "direct delivery" or "direct transfer." 

Examining the jury charge as a whole in accordance with the first Almanza
factor, we conclude that this factor weighs only slightly in favor of concluding that
egregious harm to appellant resulted from the trial court's error in not categorizing
delivery, in the portion of the application paragraph that applied the law of parties,
as "constructive" delivery. 

2. The State of the Evidence

We next consider the state of the evidence, including the contested issues and
the weight of the probative evidence. The evidence at trial came almost entirely from
law enforcement officers who were part of the undercover operation involving the
two drug transactions. As addressed in our discussion of appellant's legal sufficiency
challenge in Cause No. 01-06-01056-CR, the evidence is legally sufficient to support
the jury's finding appellant guilty, as a party, of Gaines's primary-actor constructive
transfer of cocaine to Agent Williams. Accordingly, this Almanza factor weighs
against our concluding that egregious harm to appellant resulted from the trial court's
error in not categorizing delivery, in the portion of the application paragraph that
applied the law of parties, as "constructive" delivery. 

3. The Argument of Counsel

In closing argument, the prosecutor explained to the jurors that they would be
receiving two charges, one for each cause. Regarding the charge in this case, the
prosecutor explained that the charge at issue would state that appellant "deliver[ed]
by constructive transfer to [E.] Williams" and reminded the jurors of the discussions
during voir dire, including constructive transfer and law of the parties. The
prosecutor stated the following:

 . . . [W]e all talked about if . . . everybody's working together
towards one common goal, then everybody helped. Everybody's
guilty. And that's the case that we have here. [Appellant] was
working together with [Gaines], with [Yvette] towards one
common goal, and that's to sell cocaine. Because he helped them,
because he aided them, because he did those things, he's guilty,
just like they are, of constructive delivery. 


(Emphasis added.) 


As the emphasized portion of the preceding excerpt demonstrates, the
prosecutor did not refer to an undefined "delivery," but to a constructive delivery, as
alleged in the indictment. 

Like the prosecutor, appellant's trial counsel did not refer to an undefined
"delivery." Instead, trial counsel focused on the meaning of constructive delivery and
on challenging whether the State had met its burden to prove that a constructive
delivery occurred. In rebuttal, the prosecutor again emphasized, "Remember what we
talked about constructive transfer. We talked about how for there to be a constructive
transfer, that by itself necessitates somebody else. I'm not telling you that [appellant]
handed over that cocaine. I'm telling you he was a party to that delivery, and that
makes him guilty." 

Neither counsel, therefore, emphasized in arguments to the jury that the jury
charge authorized a finding of guilt based only on a determination that appellant
made an undefined "delivery" or that he was a party to an undefined "delivery."
Accordingly, this Almanza factor, too, weighs against finding that egregious harm to
appellant resulted from the trial court's error in not categorizing delivery, in the
portion of the application paragraph that applied the law of parties, as "constructive"
delivery. 

4. Other Relevant Information

Appellant supports his claim that the jury charge resulted in egregious harm by
arguing that the members of the jury were confused about both the different methods
of transfer and the law of the parties under section 7.02(a)(2) of the Penal Code. A
thorough review of the record demonstrates that some confusion between the
definitions of delivery by actual transfer and delivery by constructive transfer began
during voir dire, when veniremembers responded to the prosecutor's explanations by
posing questions. In responding to these inquiries, the prosecutor explained that the
trial court would provide a written charge for guidance. The prosecutor also
explained the law of the parties. 

We note further that the jury issued four communications to the trial court. 
One of these requested a break, and the remaining three concerned requests for copies
of a video of the Coastal station and court reporter notes concerning DEA officers'
discussion of plans assisting with drug enforcement. No communications referred to
methods of transfer or the law of parties. 

Appellant also argues that the evidence permits an alternative finding by the
jury under the charge given. See Evans, 202 S.W.3d at 165 (addressing alternative
hypothesis proposed by defendant). Specifically, appellant argues that Yvette could
have owned the drugs that she transferred and sent appellant and Walker to bring
them and Gaines to the Coastal station and thus effected an actual transfer of
narcotics under her control. In contrast to Evans, see id., the record in this case does
not support that appellant suggested this alternative finding to the jury. But even if
the jury considered this alternative under the evidence presented, the jury could have
chosen, and obviously did choose, to reject it. See id.

Neither the jury's alleged confusion, nor the alternative findings that appellant
contends that the charge permits, weighs heavily, as other relevant information under
the fourth Almanza factor, in favor of finding that egregious harm to appellant
resulted from the trial court's error in not categorizing delivery, in the portion of the
application paragraph that applied the law of parties, as "constructive" delivery. 

Having applied the Almanza factors, we hold that the trial court's error in not
categorizing delivery, in the portion of the application paragraph that applied the law
of parties, as "constructive" delivery did not result in egregious harm to appellant. 

We overrule appellant's first point of error in Cause No. 01-06-01056-CR.

Conclusion
 

Having concluded that the evidence is legally sufficient to support the jury's
verdict in Cause No. 01-06-01056-CR and that the error in the jury charge did not
result in egregious harm to appellant, we affirm the judgment of the trial court in
Cause No. 01-06-01056-CR. Having concluded that the evidence is legally
insufficient to support the verdict in Cause No. 01-06-01055-CR, we reverse the
judgment of the trial court and render a judgment of acquittal. 




 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Jennings and Bland.


Justice Bland, dissenting in Cause No. 01-06-01055-CR.


Publish. Tex. R. App. P. 47.2(b).
1. The two charges were tried together. Trial court cause number 04CR3201 is appellate
cause number 01-06-01056-CR; trial court cause number 04CR3202 is appellate
cause number 01-06-01055-CR. 
2. Before reading the jury charges to the jury, the trial court explained that there were
two charges, but that they were essentially the same and differed only with respect to
the individual undercover agents to whom the narcotics were allegedly transferred. 
In the interest of brevity, after reading to the jury the charge in Cause No. 01-06-01056-CR in its entirety, the trial court read only the section of the charge in Cause
No. 01-06-01055-CR that differed from the previous charge.
3. We address this contention below in our disposition of appellant's first point of error
in Cause No. 01-06-01056-CR, which challenges the jury charge in that cause. 
4. An individual is criminally responsible as a party to an offense if the offense is
committed by his own conduct, by the conduct of another for which he is criminally
responsible, or both. Tex. Penal Code Ann. § 7.01(a) (Vernon 2003). A party may
be criminally responsible as a party in several ways. See Tex. Penal Code Ann. §§
7.01-.02 (Vernon 2003). The provisions of the Penal Code in this case are sections
7.01(a) and, in particular, 7.02(a)(2). A person is criminally responsible under section
7.02(a)(2) for an offense committed by another if, acting with intent to promote or
assist the commission of the offense, the person solicits, encourages, directs, aids, or
attempts to aid the other person to commit the offense. Tex. Penal Code Ann. §
7.02(a)(2). The jury charge in this case included an instruction that generally tracked
this statute, an instruction that, "Mere presence alone will not constitute one a party
to an offense," and a beyond-a-reasonable doubt paragraph that repeated that caution. 

5. The jury charge in this case defined "deliver constructively" as "a transfer of a
controlled substance belonging to some other person or agency at the instance and
direction of the individual accused." Appellant did not object to this definition in the
trial court and does not challenge the definition on appeal.
6. In Rasmussen v. State, 608 S.W.2d 205, 210 (Tex. Crim. App. [Panel Op.] 1980) (op.
on State's mot. for rehearing), the State failed to prove a constructive delivery of the
contraband by the defendant. In this case, before the trial court submitted the case to
the jury by a charge that included the law of parties, appellant moved twice for a
directed verdict. Relying on Rasmussen, appellant argued that no evidence
established that appellant had constructively transferred cocaine. The trial court
overruled both motions, and appellant does not challenge those rulings on appeal. 


 In Rasmussen, the State also relied on the law of parties, as here, but the Court of
Criminal Appeals found reversible error in the jury charge, which included only an
instruction on the law of parties in the abstract and did not include, in addition, a
paragraph that applied the law of parties to the defendant. See id., 608 S.W.2d at
207-08. In contrast to Rasmussen, the jury charge here included both an instruction
on the law of parties in the abstract and an application paragraph on the law of parties. 
7. Appellant did not object to this evidence.
8. The Court of Criminal Appeals used the term "tradition"[sic], for which we have
substituted "transfer." Sims v. State, 117 S.W.3d 267, 273 (Tex. Crim. App. 2003). 
When a transferor directs the recipient to retrieve contraband that is already in place,
a constructive transfer occurs; but a completed actual transfer also occurs when the
recipient retrieves the contraband. See id. (holding that constructive transfer occurred
notwithstanding that actual transfer also occurred).